**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rudolph Hugh George MARTIN,
Defendant-Appellant.**

**No. 18904.**

United States Court of Appeals,
Seventh Circuit.

Argued May 22, 1972.

Decided Sept. 15, 1972.

John Powers Crowley, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before CLARK, Associate Justice,* and CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from an order revoking probation and imposing a new sentence. Martin was indicted on June 24, 1969, for violating 18 U.S.C. § 1542, in that on or about September 25, 1959, he, "wilfully and knowingly, did make a false statement in an application for a passport with intent to induce and secure for his own use the issuance thereof under the authority of the United States contrary to the laws regulating the issuance of such passports. . . . "[1] Specifically it was alleged that Martin signed the application as "Martin Moore," a citizen of the United States, whereas he was really a Jamaican citizen in this country as a permanent resident alien. On trial, Martin was found guilty by a jury. The trial

---

* Associate Justice Tom C. Clark, United States Supreme Court, retired, is sitting by designation.

1. Appropriate motions were made to dismiss the indictment since it was brought nine years and nine months after the offense occurred. These were denied since the statute of limitations for this offense was ten years.

judge, however, granted a motion for a new trial. The case was subsequently reassigned by the Executive Committee of the district court.

On January 13, 1970, Martin's attorney wrote the United States Attorney and informed him that the defendant wished to leave the United States and "[a]t this time he has no intention of returning to the United States to live."

On February 3, 1970, the United States Attorney responded and agreed to dismiss the indictment subject to the following conditions:

"(a) That the defendant depart this country and not return.

"(b) That he be ordered deported from the United States and in lieu thereof be granted voluntary departure."

On February 11, 1970, Martin's counsel responded to the proposal by categorically rejecting the conditions. He pointed out that he had stated that Martin wished to return to Jamaica and had no intention of returning to the United States to live and these are still "to the best of my knowledge, Mr. Martin's intentions. However, he does not intend to turn those contentions into conditions for dismissal of the indictment pending against him."

On February 18, 1970, Martin appeared before the district court and pleaded guilty to the offense charged. The court then said,

"It is my understanding that agreement has been reached between the Government and your counsel that upon the entry of this plea of guilty the Government is willing to accede to the recommendation of your counsel that six months' probation be granted, with a condition of probation that you leave the country within 60 days."[2]

There is nothing affirmatively to show us that the district court was aware of any of the prior correspondence.

Martin's probation officer had advised Martin to contact the officer with information concerning the date of departure and the name of the airline and Martin was given an eight months' supply of Federal Report Forms to be filled out and returned to the Probation Department.

The Government asserts that the defendant advised the probation officer that he understood all of the instructions and would abide by them. Martin departed for Jamaica on February 28, 1970, but apparently tiring of the thalassic area he returned to the United States early in April 1970. At no time did Martin file any of the monthly probation report forms, even though shortly after arriving in Jamaica he had written the probation officer that he had lost the forms and needed replacements, which were sent to him. In early June of 1970, Martin apparently went to the probation office and informed them of his actions. Subsequently, a bench warrant was issued for his arrest. Martin turned himself in at the probation office explaining that he had not thought he was violating his probation order by returning to the United States prior to the expiration of six months. He admitted failure to file any of the monthly probation report forms.

Martin's motion to vacate the sentence was overruled and in October 1970, the district court made the following order:

"IT IS ADJUDGED that imposition of sentence be and hereby is suspended and the defendant placed on probation to the Chief Probation Officer of this court for a period of THREE (3) YEARS.

2. The exact text of the court's order was as follows:

"Order leave to defendant to withdraw plea of not guilty and defendant with counsel enters plea of guilty, is warned of consequences and persists in plea of guilty. Order imposition of sentence suspended and defendant placed on probation for a period of six (6) months with the special condition that defendant leave the United States within 60 days hereof."

"Conditions of Probation: Defendant serve the first SIX (6) MONTHS of said probationary period in a House of Correction to be designated by the Attorney General, and with the condition that upon his release defendant is to return to Jamaica and not re-enter the United States illegally."

The district judge also remarked that he felt that the defendant had understood the conditions of probation and his violation of those conditions was willful.[3]

Martin's principal argument on this appeal is that the order of probation originally entered by the district court included an illegal term and was therefore invalid, that violation of an invalid term of probation could not constitute grounds for revocation of probation, and in any event, the new probation included an equally invalid ground. He relies on Dear Wing Jung v. United States, 312 F.2d 73 (9th Cir. 1962). There the Ninth Circuit struck down a condition of probation "that the defendant depart from the United States" on the ground that it was either "cruel and unusual punishment" or a denial of due process of law.[4]

While it is clear that administrative hearings in deportation cases must conform to due process of law and the Administrative Procedure Act, Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950), we find no basis for striking down the condition of probation here involved, either because of lack of due process or as cruel and unusual punishment. For this point only we are assuming arguendo, but not accepting, the Government's position that the condition of the probation clearly was that Martin would stay out of the United States for at least six months. Even under this construction, which we do not think was justified, it would not be the equivalent of the banishment which the Ninth Circuit found to be cruel. In Dear Wing Jung, it is apparent that the defendant did not have a resident alien card and so could not return to this country as of right at any time; Martin's card was never taken and the Government in oral argument stated that Martin could probably return to the country legally as long as he had the card.[5] Further, Gordon and Rosenfeld in their treatise, Immigration Law and Procedure, at § 9.22, cite Dear Wing Jung as the only case where this type of sentence has been condemned.

---

3. "The Court: The Court has received this report and has also examined the pre-sentence report heretofore received. The report here clearly indicates that this defendant was aware that he was not to return. He was given the forms to fill out. At no time did he comply with the Court's order until after he was apprehended, and then he proceeded to comply with them. One letter is all that was sent.

"Under all of the circumstances, the Court is of the opinion that, this being willful, I have no alternative but to impose a sentence."

4. Probation is authorized under 18 U.S.C. § 3651:

"§ 3651. Suspension of sentence and probation

"Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and *upon such terms and conditions as the court deems best.*" (Emphasis added.)

5. Title 8 U.S.C. § 1181 provides for the admission of immigrants to the United States. In subsection (b) it allows the Attorney General to establish regulations for readmission of resident immigrants without their being required to obtain a passport, immigrant visa, reentry permit or other documentation. Thus, 8 C.F.R. § 211.1(b) provides that an alien returning to an unrelinquished lawful permanent residence in the United States after a temporary absence may present Form I–151, Alien Registration Card, if returning within 1 year, or a valid, unexpired reentry permit duly issued to him, or may be granted a waiver of such documentation upon application on Form I–193.

If the condition had been to stay outside of the United States for six months and had been clearly expressed in the probation order, which it was not, and had been so understood by Martin, which is not clear, there would be no basis for complaint by Martin about the first order. The terms of probation whatever they may have been were agreed to by him and were apparently recommended by his counsel. They were not imposed upon him as in *Dear Wing Jung*. Martin entered his guilty plea in exchange for a promise by the United States Attorney to recommend a sentence and apparently the recommended sentence was that which the district court entered. The difficulty is that it is not clear what the agreement resulting from the plea bargaining was.

If it had been as contended by the Government, Martin could scarcely complain of being overreached under the circumstances here. This is particularly true when it is considered that he had been convicted of a crime and only the granting of a new trial prevented his being sentenced on the conviction.

While the district court did observe that the presentence report had caused him to entertain the opinion that Martin was aware that he was not to return, presumably referring to refraining from returning for the six months period, we find no real support for this in the record. The Government characterizes as ridiculous the possibility that Martin could have thought that by leaving the country for even one day he might have fulfilled the special condition of probation. Nevertheless, in view of the history of the proceedings leading up to the first probation order, it is entirely consistent with Martin's view that he was not compelled to stay out of the United States for six months. He had indicated through his attorney that he was willing to leave and did not intend to return. With the knowledge of his intention, there is no reason for not believing that the only condition to be imposed was that he actually depart the United States, and his own intention would take care of his not returning. He apparently did change his mind and we are presented with the problem of determining whether he violated his probation or whether the probation order itself was valid. No great art of draftsmanship would have been required to have provided specifically that the condition of the probation was that he depart the United States and remain out of the United States for the period of probation. This was not done and aspects of due process would seem to require an ability to rely on the expressed conditions of probation as a guide for action, at least as to those special conditions of probation which go beyond the procedural reporting requirements. "Where there is any ambiguity, the prisoner is entitled to have the language in the pronouncement [of sentence] construed most favorable to him." Gaddis v. United States, 280 F.2d 334, 336 (6th Cir. 1960).

Even the district court's October 1970 sentence is subject to the same ambiguity, as after his release from the House of Correction, Martin still has two years and six months left on his probation "with the condition that upon his release defendant is to return to Jamaica and not re-enter the United States illegally." Since the Immigration and Naturalization Service has never instituted proceedings to take away Martin's resident alien status, it was conceded by counsel at oral argument that Martin could promptly return to this country without breaking the law. Thus, on the face of the order, once again all he would have to do is cross the border and then come back.

■ On the basis of these considerations, we hold that the terms and conditions of the original probation were sufficiently ambiguous as to be of no effect.

We therefore remand the case to the district court for further proceedings holding, however, that effect must be given to the fact that the guilty plea followed plea bargaining. The district court may determine what the agreed

bargain was and if it in its judgment desires to handle the matter of resentencing in accordance therewith, then the order should specifically set forth the exact terms and conditions of the probation. Obviously, the plea bargaining contemplated probation and no sentencing. If in fact there was no meeting of the minds by virtue of plea bargaining, then Martin should be allowed to withdraw his plea of guilty and replead.

Inasmuch as the second purported sentencing was predicated upon the violation of an invalid probation order, it also cannot stand.

For the reasons hereinbefore set out, we reverse and remand for further proceedings not inconsistent herewith.

Reversed and remanded.