**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Francisco BUIDE–GOMEZ,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Rosalino GARCIA–FORCADA,**
**Defendant-Appellant.**

**Nos. 84–8101, 84–8352.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 22, 1984.

Rehearing and Rehearing En Banc
Denied Dec. 17, 1984.

---

Michael K. McIntyre, Atlanta, Ga., for defendant-appellant in both cases.

Charles E. Brown, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee in No. 84–8101.

Julie E. Carnes, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee in both cases.

John O. Ellis, Jr., Federal Public Defenders, Atlanta, Ga., for defendant-appellant in No. 84–8352.

Before GODBOLD, Chief Judge, CLARK, Circuit Judge, and THOMAS[*], District Judge.

DANIEL HOLCOMBE THOMAS, District Judge:

These two cases were consolidated for appeal before this court. In each case the appellant is challenging the legality of the uncertainty of the criminal sentences imposed. Each appellant contends that his respective consecutive sentences violate Rule 35 of the Federal Rules of Criminal Procedure, Title VIII of the United States Code, and the Fifth and Eighth Amendments of the United States Constitution.

## FACTS

Francisco Buide-Gomez arrived in the United States on May 28, 1980, as a member of the "Freedom Flotilla" from Cuba. Because he was an illegal alien, the sixteen year-old Buide-Gomez was detained by the Immigration and Naturalization Service (INS). This appellant was detained with other Cuban Nationalists in Pennsylvania until October 13, 1980. After being paroled into American society, he was arrested on May 11, 1981, in Philadelphia for resisting arrest and disorderly conduct. After being adjudged delinquent, INS regained custody of the appellant and detained him at the United States Penitentiary, Atlanta, Georgia, with other Cuban detainees.

On June 25, 1982, during his detention, Buide-Gomez became involved in a fight with another inmate. The appellant subsequently pled guilty to the charge of assault of a fellow detainee. On January 27, 1984, the district court sentenced him "for imprisonment for a period of thirty (30) months following his legal release, parole, or from his present incarceration."

The companion case in this matter involves another Cuban detainee, Rosalino Garcia-Forcada, who arrived in the United States on May 9, 1980, also as part of the "Freedom Flotilla" from Cuba. He was briefly detained at the Florida State Prison due to his status as an illegal alien. Garcia-Forcada was ultimately transferred to the United States Penitentiary in Atlanta, Georgia.

During his detainment, on October 20, 1982, an altercation ensued between Garcia-Forcada and other Cuban detainees. As a result of this incident, the appellant was indicted on charges of assaulting a detainee, resisting the correctional officers, and carrying a knife. He pled guilty to the charge of conveying a knife in a federal penal institution.

On April 19, 1984, the district court sentenced the appellant to incarceration for

---

[*] Honorable Daniel Holcombe Thomas, U.S. District Judge for the Southern District of Alabama, sitting by designation.

four years, to begin after appellant's release from detention as an illegal alien. At Garcia-Forcada's sentencing, the court stated that if deportation should become possible either before or after the defendant began serving his sentence, the court desired the defendant to be deported regardless of the status of his sentence.

As the facts indicate, the sentences given by the district court to the two defendants were to be consecutive to their release from detention as illegal aliens. On this appeal the two appellants contend that their respective sentences are illegal because each sentence imposed is indefinite and uncertain. The primary basis of this contention is that no one can say with certainty when Buide-Gomez or Garcia-Forcada will be released from administrative detention and paroled into American society or when Cuba will allow these appellants and other Cuban detainees to be deported to Cuba. Consequently, there is no certainty as to when the sentences that run consecutive to release from detention will begin or end.

### LEGAL CONCLUSIONS

▮ At the outset, this court recognizes that indefinite and uncertain criminal sentences are illegal. *See, e.g., Anderson v. United States*, 405 F.2d 492, 493 (10th Cir.1969), *cert. denied*, 394 U.S. 965, 89 S.Ct. 1317, 22 L.Ed.2d 566 (1969); *United States v. Patrick Petroleum Corp. of Michigan*, 703 F.2d 94, 98 (5th Cir.1982). In *Smallwood v. United States*, 386 F.2d 175 (5th Cir.1967), the court enunciated a standard for testing the validity of a criminal sentence. The court held that "a sentence in a criminal case should be clear and definite … and be so complete as to need no construction of a court to ascertain its import." *Id.* at 176. In addition, courts

have refused to permit the imposition of general sentences. *See, e.g., Benson v. United States*, 332 F.2d 288 (5th Cir.1964); *United States v. Scott*, 664 F.2d 264 (11th Cir.1981). A general sentence is one in which the court does not specify any particular count on which it is imposing sentence, but instead imposes a sentence that does not exceed the aggregate sentence available on all counts, but does exceed the statutory maximum term for certain individual counts on which the defendant was convicted.

▮ In these consolidated cases, however, this court is unable to find any lack of clarity or definiteness in these sentences. Certainly, the district court did not impose a general sentence. The lower court in each of the sentencing proceedings for the two appellants specifically set the amount of time each of the two men was to be incarcerated for the crimes they committed. In the case of Buide-Gomez, the sentence was for 30 months; for Garcia-Forcada, the sentence was four years. The uncertainty, if any exists, is not because of the sentence imposed, as was the situation in the above cited authority, instead, here the day the sentence will begin is unknown.[1]

This particular dilemma that the appellants find themselves in is not a unique one. The Courts agree that the law does not require a person to know the exact date that his sentence will begin. *Bandy v. Willingham*, 398 F.2d 333, 335 (10th Cir. 1968); *Bernstein v. United States*, 254 F. 967 (4th Cir.1918); *Veit v. Caldwell*, 400 F.Supp. 700, 701 (ED N.C.1975). Practically, the appellants here are in much the same situation as defendants whose sentences run consecutively to one or more other sentences not yet completed. For example, a defendant whose sentence is set

---

**1.** The appellants' real complaints seem to be founded on the fact that they are unsure of the date they will be released from administrative detention. The indefiniteness of their present detention is not at issue in this appeal of their criminal convictions. In *Rafael Fernandez Roque v. Smith*, 567 F.Supp. 1115 (N.D.Ga.1983), *rev'd* 734 F.2d 576 (11th Cir.1984), a group of Cuban detainees brought a class action suit

challenging the power of the government to detain them indefinitely. They also challenged the procedures being used in paroling the detainees into American society. *Fernandez Roque* is presently on remand to the district court for further proceedings. The decision in that case, not the present one, will properly answer the question of the legality of indefinitely holding detainees.

to run consecutively to one or more life sentences does not know when, if ever, he will be paroled and thus cannot be certain when, if ever, he will commence service of the consecutive sentence. In any situation where parole is a possibility, a defendant cannot be sure when any prior sentence will end, so as to know when his consecutive sentence will commence. Further, it is well established that consecutive sentences are legal. *McKlemurry v. United States*, 478 F.2d 1185, 1188 (5th Cir.1973); *United States v. Campisi*, 622 F.2d 697 (3rd Cir. 1980); *United States v. Williams*, 487 F.2d 215 (5th Cir.1973); *Burwell v. United States*, 353 F.2d 88 (5th Cir.1965); *Lamb v. Heritage*, 310 F.2d 71 [2] (5th Cir.1962).

Another issue that the appellants raise on this appeal is based upon the language of Title 8 of the United States Code.[3] Section 1252(h) states that an alien sentenced to imprisonment cannot be deported until the alien is released from confinement. The appellants contend that since they cannot begin their criminal sentence until they have been released from detainment and since they cannot be released until they have served the criminal sentence, then the consecutive nature of the sentence traps them in an illegal vicious circle.[4]

This court is aware that the situation presented by these Cuban Nationalists is indeed a novel one that does not fit neatly into established immigration or criminal procedures.[5] This court is of the opinion that the appellants' situation is no different

than any other inmate serving consecutive sentences.

Accordingly, the sentences imposed by the district court were not illegal or indefinite and that court's judgment is AFFIRMED.

---

2. Since consecutive sentences are legal it necessarily follows that their imposition does not violate the constitution. Therefore, the appellants' assertions that the wait between their present confinement and the consecutive criminal sentence given is in derrogation to the constitution must fail. *See, e.g., McKlemurry v. United States*, 478 F.2d 1185, 1188 (5th Cir. 1973).

3. 8 U.S.C. § 1252(h) provides that: "An alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by the release of the alien from confinement. Parole, probation, or possibility of rearrest or further confinement in respect of the same offense shall not be ground for deferral of deportation."

4. There would be a vicious circle only if credence were not given to the district court's statement that if deportation of the defendant should become possible either before or after he began serving his sentence, he was to be deported regardless of the status of his sentence. At oral argument before us this was acknowledged by the government to be its intent, and we cannot conceive of the government's not abiding by it. Should the government not abide by it we assume that the sentencing court would promptly grant relief.

5. The government of Cuba refused to allow the members of the "Freedom Flotilla" to be deported to Cuba.