795 F.2d 19
 The UNITED STATES
v.
Gary GOLDEN, Thomas Seft, Charles Namey, Gary Vowinckel,
James Windsor, Frank Woiewodski, Roland Santarlasci, Wayne
Miller, Duane Banas, Arthur Locosale, Edwin Anker, Jr.,
Richard Gabrish, Frederick Majestic, Virginia Rados.
Appeal of Thomas SEFT.
 No. 86-3052.
 United States Court of Appeals,
Third Circuit.
 Argued June 17, 1986.
Decided July 11, 1986.
 
 Mark J. Homyak (Argued), Pittsburgh, Pa., for appellant.
 Constance M. Bowden (Argued), Asst. U.S. Atty., J. Alan Johnson, U.S. Atty., Paul J. Brysh, Pittsburgh, Pa., for appellee.
 Before SEITZ, HUNTER, and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 On November 15, 1982, a grand jury sitting in the Western District of Pennsylvania indicted Thomas Seft on one count of conspiracy to distribute and possess with intent to distribute marihuana and cocaine in violation of 21 U.S.C. Sec. 846 (1982), four counts of using a telephone to facilitate the conspiracy in violation of 21 U.S.C. Sec. 843(b) (1982), one count of possessing cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) (1982), and three counts of possessing marihuana with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) (1982). Seft entered into a plea agreement in December 1982. He agreed to plead guilty to one count of violating 21 U.S.C. Sec. 846 and one count of violating 21 U.S.C. Sec. 843(b). The agreement provided that Seft would assist the government in its investigation and prosecution of drug-related crimes and would testify against his codefendants. The government agreed to place Seft in the Federal Witness Protection Program if he were in any danger because of his cooperation with the government. Seft entered his guilty plea on May 17, 1983 and, in July 1983, was admitted into the Witness Protection Program along with his common-law wife, Missy Ansanni.
 
 
 2
 After entering his guilty plea, Seft continued cooperating with the United States Attorney's Office and the Federal Bureau of Investigation. He and Ansanni were relocated and he was not allowed to contact family or friends. From December 1982, when he arranged his plea agreement, until June 1983, Seft met approximately three times a week with representatives of the FBI and the United States Attorney's Office. After July 1983, he was in daily contact with the Marshal's Service. His contact with these government officials gradually decreased to weekly or biweekly. On February 9, 1984, the district court sentenced Seft to a term of imprisonment of eight years and to a two-year concurrent term. The order of judgment and commitment stated: "the defendant is hereby committed to the custody of the Attorney General or his authorized representatives for imprisonment for a period of eight years as to Count 1.... It is ordered that the defendant is permitted to self-report at such time and place when notified by the United States Marshal's Office."
 
 
 3
 After the sentencing, Robert Johnston, an Inspector with the Marshal's Service in the Western District of Pennsylvania, contacted the headquarters for the Witness Protection Program and informed them of the details of Seft's sentence. Johnston sent a copy of Seft's judgment of probation and commitment order to the Bureau of Prisons. After the sentencing Seft returned to his relocation area. He filed a motion to reduce his sentence pursuant to Federal Rule of Criminal Procedure 35(b). The lower court denied this motion.
 
 
 4
 Seft had been told to continue to live under his new identity and to cooperate with the government in its drug investigations. Seft and his wife obtained an apartment and had a child. He started his own business. A representative of the United States Marshal's Service testified that Seft had demonstrated unusual initiative and was "doing a remarkably good job of keeping himself out of any kind of trouble and being a decent citizen."
 
 
 5
 In May 1985, Seft returned to Pennsylvania to testify at a trial. An Assistant United States Attorney learned that Seft had not yet been ordered to report to prison so he and Johnston contacted the Bureau of Prisons. On October 31, 1985, the United States Marshal's Office ordered Seft to report to prison on November 2, 1985. On November 1, 1985, he obtained an order staying execution of the sentence. He filed a motion to withdraw his guilty plea on November 24, 1985 asserting that the government had breached the plea agreement and waived jurisdiction over him, and that the sentence imposed was illegal. The court denied the motion on January 15, 1986. At the hearing on the motion, the government admitted that it took the government twenty-one months to order Seft to report to prison because of a bureaucratic error and through no fault of Seft.
 
 
 6
 The government alleges that while the lower court had jurisdiction to decide Seft's claims under Federal Rule of Criminal Procedure 32(d) and Rule 35(a), it had no jurisdiction to consider his waiver claim. Seft returned to the sentencing court to make all of his claims. This is the proper course for submitting post-conviction motions or motions to vacate pursuant to 28 U.S.C. Sec. 2255 (1982). The government maintains, however, that Seft's waiver claim is properly brought pursuant to a writ of habeas corpus, 28 U.S.C. Sec. 2241, and that the sentencing court did not have jurisdiction to entertain a motion for the writ.
 
 
 7
 Seft, who is now in prison conceded that his waiver claim should have been brought under 28 U.S.C. Sec. 2241 and that this court, therefore, has no jurisdiction over that claim. Seft argued, however, that his sentence was flawed when given because it contained a self-report clause. This claim can be pursued under Rule 35 or by a motion to vacate pursuant to Sec. 2255. Likewise, his claim that the government has breached the plea agreement can be made pursuant to Rule 32 or Sec. 2255. The lower court, as the sentencing court, had jurisdiction to hear claims based on Rule 35, Rule 32, or Sec. 2255.
 
 
 8
 Seft argues, pursuant to Rule 35, that he was given an illegal sentence. Rule 35(a) states that: "The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." Seft contends that his sentence was illegal because it was indefinite as to time of service. The sentence provided that Seft was "permitted to self-report at such time and place when notified by the United States Marshal's Office." A sentence is illegal if it is ambiguous with respect to the time in which it is to be served. See Scarponi v. United States, 313 F.2d 950, 953 (10th Cir.1963). Several courts have found a sentence to be illegal because the inexactitude as to time of service made it unclear when the sentence was to commence in relation to other sentences that the defendant had to serve. See United States v. Solomon, 468 F.2d 848 (7th Cir.), cert. denied, 410 U.S. 986, 93 S.Ct. 1513, 36 L.Ed.2d 182 (1972); United States v. Walker, 346 F.2d 428, 429 (4th Cir.1965); Scarponi v. U.S., 313 F.2d 950 (10th Cir.1963). In the case before us, the problem is not that the sentence is unclear on whether it is to be served consecutively or concurrently. However, the sentence given to Seft is unclear as to when it was to start and as to who had the authority to decide when he should report.
 
 
 9
 This case is distinguishable from those that have rejected Rule 35 claims based on the contention that the prisoner's term of imprisonment was being improperly calculated. See Soyka v. Allredge, 481 F.2d 303 (3d Cir.1973). Seft alleges that his sentence was illegal when it was given. Thus, his sentence is more analogous to one which required a defendant to leave the country but did not specify how long he had to stay out. The Seventh Circuit determined that such a sentence was sufficiently ambiguous to be of no effect. See United States v. Martin, 467 F.2d 1366, 1369 (7th Cir.1972). A sentence with no specified starting date has many of the same evils as a sentence with no completion date. The defendant is left in limbo, unable to plan his life.
 
 
 10
 We find that the sentence was illegal because it was wholly indefinite as to when Seft's sentence would begin. Generally, a defendant is not entitled to credit for time spent released on his own recognizance prior to entering prison. See Ortega v. United States, 510 F.2d 412 (10th Cir.1975). However, we believe that the district court should resentence Seft, specifying when the court had intended to have Seft begin his sentence. When that is done, the district court may determine that Seft is entitled to a credit for some portion of the twenty-one months between the time Seft was sentenced and the time he was actually ordered to report to prison.
 
 
 11
 We find no merit in Seft's claim that he should be allowed to withdraw his guilty plea because the government breached the plea agreement. The district court was entitled to reject Seft's unsupported testimony that he expected credit on his sentence for time spent in the Witness Protection Program. The plea agreement specifically provided that he would be given credit for periods of incarceration prior to sentencing. By statute, credit for time prior to commencement of the sentence is given for time spent in custody. However, custody has been defined as actual incarceration. See United States v. Ortega, 510 F.2d 412 (10th Cir.1975). While restrictions were placed on Seft, the district court was not required to equate his life in the Witness Protection Program with incarceration.
 
 
 12
 For the reasons discussed above, we will vacate the sentence and remand to the district court for resentencing in light of this opinion.