**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Nancy MELODY, Defendant–Appellant.**

**No. 87–1629.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1987.

Decided Nov. 22, 1988.

**500**

Keith Findley, Legal Asst. of Institutionalized Person Program, University of Wisconsin Law School, Madison, Wis., for defendant-appellant.

John F. Podliska, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before COFFEY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

KANNE, Circuit Judge.

After being convicted of mail fraud and conversion, Nancy Melody and her husband Thomas were each sentenced to four-years imprisonment. As a result of her comments at sentencing, the district court stayed the execution of Nancy Melody's sentence until her husband's release so that their children would have one parent at home. The untimely death of Thomas intervened before his four-year sentence had been completed. After her husband died and prior to her incarceration, Nancy Melody filed a "motion for relief from sentence" pursuant to 18 U.S.C. § 3651 and Rule 35(a). She contended that the district court should exercise its discretion and suspend the execution of her sentence altogether. She also contended that the stay rendered her sentence illegal. The district court denied her motion. We affirm.

## I. BACKGROUND

Nancy Melody and her husband Thomas operated the Hoarty Grain Company, a grain warehouse in Streator, Illinois. On December 3, 1982, a federal jury convicted Nancy and Thomas of fifteen counts: (1) of devising and participating in a four-year, $1.5 million scheme to defraud approximately eighty-five LaSalle County, Illinois, farmers and the Commodity Credit Corporation in violation of 18 U.S.C. § 1341; and (2) of wilfully converting grain owned by, or pledged to, the Commodity Credit Corporation to their own use and to the use of the Hoarty Grain Company in violation of 15 U.S.C. § 714m(c).

At the sentencing hearing held on January 13, 1983, the trial counsel for both Nancy and Thomas Melody strenuously argued for a sentence of probation for both defendants. Near the conclusion of his presentation, however, he stated that if the court nevertheless concluded that some period of incarceration was necessary, that to send both Melodys to prison would "completely disrupt the family and disrupt the children who live at home ...." He asserted that Nancy Melody was "a devoted mother to her family" and that her incarceration would serve no rehabilitative or punishment purpose. A few moments later when the court asked Nancy Melody if she had anything she wished to say, her entire response was: "Just, your Honor, that we just are asking your Honor to give us a chance to be able to pick up the pieces of our lives and keep our family together."

District Judge John F. Grady sentenced Nancy and Thomas Melody each to four-years concurrent imprisonment on eight counts of the indictment. The judge suspended imposition of sentence on seven other counts and placed the defendants upon five-years concurrent probation on those counts. He ordered the probation to run consecutively to the prison sentences. Further, as a condition of probation, the judge ordered the defendants to make restitution to the victim farmers and the Commodity Credit Corporation in the amount of $1.4 million.

In his sentencing remarks, Judge Grady made no specific reference to the statements of Nancy Melody or her counsel. However, the judge stated that he would stay execution of both defendants' sentences pending appeal, "and in the case of Nancy Melody, [he would] stay execution of her sentence until Thomas Melody [had] been released from custody on those counts to which he [had] been sentenced to prison." The judge stated that his "purpose [was] to make sure that the children of the defendants [had] one parent with them." As a result, Nancy would not begin to serve her sentence until Thomas had been released. Neither the Melodys nor their counsel raised any objection to, or suggested any alteration of, the stay of Nancy's sentence either at the sentencing hearing or at any time prior to the "motion for relief from sentence" which was filed shortly before the court dissolved the stay of incarceration.

On March 19, 1984, this court affirmed the convictions and the length of their respective sentences in an unpublished order. The United States Supreme Court denied the defendants' petition for a writ of certiorari on October 1, 1984. *Melody v. United States*, 469 U.S. 852, 105 S.Ct. 175, 83 L.Ed.2d 109 (1984).

On January 11, 1985, the defendants filed a second motion for a new trial which the district court again denied. On March 26, 1986, we affirmed the district court's denial of the defendants' second motion for a new trial in an unpublished order.

On July 25, 1984, while their first appeal was still pending, the defendants filed Rule 35(b) motions to reduce their sentences. On April 18, 1986, following our affirmance of the defendants' second appeal, the district court denied both defendants' motions for reduction of sentence. The Melodys did not appeal the district court's decision to deny their Rule 35(b) motions.

On August 14, 1984, Thomas Melody began serving his four-year sentence. On February 10, 1987, while hospitalized but technically still in custody, Thomas Melody died from cancer.

On March 27, 1987, Nancy Melody filed a "motion for relief from sentence" pursuant to 18 U.S.C. § 3651 and Rule 35(a) of the Federal Rules of Criminal Procedure. In the district court, Nancy Melody's arguments focused largely upon the burden and hardship that her family would endure if her sentence were imposed as it was planned originally. Essentially, her motion was a last minute request for leniency. She argued that even though "the time for modifying [her] sentence under Rule 35(b) of the Federal Rules of Criminal Procedure [had] elapsed," the district court had jurisdiction under 18 U.S.C. § 3651 to suspend her sentence and impose probation.

The district court expressed doubt that it had jurisdiction to hear what was essentially a new Rule 35(b) motion for reduction or correction of sentence. Nevertheless, the district court assumed it had jurisdiction and, after considering the motion on its merits, declined to reduce her sentence.

Nancy Melody also made a Rule 35(a) motion, arguing that her sentence was illegal in light of 18 U.S.C. § 3651. She claimed that when the district court stayed the execution of her sentence, the district court in fact had suspended her sentence. Consequently, the court's failure to impose probation rendered her sentence illegal under 18 U.S.C. § 3651. She concluded that she was entitled to resentencing and should receive a suspended sentence, or at least should receive credit for the period of the stay.

The district court ruled that the sentence was not illegal. The district court noted that even if it the stay somehow was improper the remedy would be to lift the stay. The court then lifted the stay and ordered Nancy Melody to report to prison.

Nancy Melody filed a notice of appeal and subsequently filed a motion to stay her sentence pending appeal. The district court refused to stay her sentence further and ordered Nancy Melody to surrender to begin serving her sentence on July 13, 1987. She presently is incarcerated.

## II. *ANALYSIS*

Nancy Melody appeals upon two grounds. First, she argues that the dis-

trict court erroneously denied her Rule 35(a) motion. She claims that the delayed execution of her sentence offends various statutory and constitutional principles. Second, she appeals the district court's decision to deny her request for probation in lieu of her original sentence pursuant to 18 U.S.C. § 3651. She argues that the district court clearly had jurisdiction to hear her section 3651 plea because Rule 35(b)'s time limitations do not affect a district court's substantive authority to order probation pursuant to section 3651 prior to a defendant's incarceration. Further, she contends that the court erroneously refused to grant that motion. We will address each of her arguments separately.

### A. *Rule 35(a)*

■ Nancy Melody contends that the district court's decision to stay the execution of her sentence pending her husband's release from prison rendered her sentence illegal for several reasons. She first argues that the stay violated 18 U.S.C. § 3651 because the district court in fact "suspended" the execution of her sentence and did not place her on probation.[1] However, Nancy Melody fails to acknowledge the differences between a "stay" and a "suspension" of her sentence.

We have held that a sentence is illegal if a court places a defendant on probation without suspending imposition or execution of his sentence, or if a court suspends imposition or execution of a defendant's sentence without placing him on probation. *See United States v. Makres*, 851 F.2d 1016, 1018 (7th Cir.1988) (citations omitted). However, section 3651 limits itself to two situations: (1) when a court enters judgment upon a conviction and then affirmatively suspends imposition of the sentence, thereby placing a defendant on probation and reserving the right to impose a sen-

tence if that defendant violates the terms of his probation; and (2) when a court imposes a term of imprisonment upon a defendant, but affirmatively suspends the term of actual incarceration and places that defendant on probation, again reserving the right to incarcerate the defendant if he violates the terms of his probation. Neither situation is involved here.

In this case, the district court sentenced Nancy Melody to four-years concurrent imprisonment on eight separate counts. Thereafter, the district judge did not "suspend" Nancy Melody's sentence—that is, he did not intend to relieve her of her term of imprisonment. Instead, he intended to delay the beginning of her incarceration. Because section 3651 does not address the situation at hand, Nancy Melody's sentence cannot violate section 3651.

■ Nancy Melody also argues that her sentence is illegal because the stay rendered her sentence impermissibly indefinite in terms of when it was to be served. Courts have held that a sentence is illegal if it is ambiguous with respect to the time in which it is to be served or if the terms and conditions of the sentence are sufficiently ambiguous as to be of no effect. *See, e.g., United States v. Martin*, 467 F.2d 1366, 1369 (7th Cir.1972). *See also United States v. Golden*, 795 F.2d 19, 21 (3d Cir. 1986); *United States v. Buide–Gomez*, 744 F.2d 781 (11th Cir.1984), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1774, 84 L.Ed.2d 833 (1985). Most cases dealing with the legality of "ambiguous" sentences concern whether a sentence is to be served consecutively or concurrently. Very few cases have addressed the effect of an inexact date of incarceration. Nancy Melody relies heavily upon our decision in *Martin* and the Third Circuit Court of Appeals' decision in *Golden*.

---

1. Section 3651, then in effect, stated in part:
   Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court ... may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

The Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, 98 Stat.1987, *codified at* 18 U.S.C. §§ 3561–3566 (Supp.III 1985) (amended in non-relevant part by the Criminal Fine Enforcement Act of 1984, Pub.L. No. 87–596, 98 Stat. 3139 (1984)), repealed § 3651 effective November 1, 1987, *see* Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985). *See United States v. Warner*, 830 F.2d 651, 656 n. 1 (7th Cir.1987).

In *Martin,* an alien was convicted of falsifying a passport application. The district court suspended imposition of his sentence and placed the defendant on probation for sixty days, subject to the condition that he leave the country. 467 F.2d at 1367 & n. 2. The district court did not specify how long the defendant was required to remain outside of the United States. The defendant did leave the country, but returned approximately one month later. He was convicted of violating the terms of his probation by returning before the six months had passed. This court held "that the terms and conditions of the original probation were sufficiently ambiguous as to be of no effect." *Id.* at 1369. Consequently, we vacated the sentence and remanded the case to the district court for resentencing.

In *Golden,* a defendant was convicted and sentenced to a term of imprisonment. The district court stated that "the defendant is hereby committed to the custody of the Attorney General" and further ordered that the defendant was "permitted to self-report at such time and place when notified by the United States Marshal's Office." 795 F.2d at 20. Prior to his sentencing, the defendant had been admitted into the Witness Protection Program and had cooperated in a series of drug-related crime investigations. After his sentencing, the Marshal's Service contacted the Witness Protection Program and informed them of the details of the defendant's sentence. The officials instructed the defendant to continue to live under his new identity and to cooperate with the government in its ongoing drug investigations. Not until approximately twenty months later was the defendant ordered to report to prison.

The Third Circuit Court of Appeals noted that the sentence was "unclear when it was to start and as to who had the authority to decide when he should report." *Id.* at 21. It opined that "[a] sentence with no specified starting date has many of the same evils as a sentence with no completion date. The defendant is left in limbo, unable to plan his life." *Id.* Consequently, the court concluded that "the sentence was illegal because it was wholly indefinite as to when

[the defendant's] sentence would begin." *Id.* at 21.

Unlike the defendant in *Martin,* we do not believe that the stay rendered Nancy Melody's sentence so ambiguous as to be "of no effect." The stay did not create any ambiguity as to the term or conditions of her sentence. She knew exactly what the court expected her to do—and when she was to do it. Thus, *Martin* is inapposite.

We also do not think that the stay left Nancy Melody "in limbo, unable to plan [her] life." In fact, the stay allowed Nancy Melody to maintain some semblance of a family, rather than forcing her or the state to place her children elsewhere while both she and her husband were in prison. Unfortunately, the death of her husband precluded the plan of child care which the judge envisioned. Nevertheless, the stay represented an arrangement which she apparently welcomed until the district court prepared to order her to begin service of her sentence. Furthermore, unlike the defendant in *Golden,* Nancy Melody's date of incarceration was not left to the unfettered discretion of the Marshal's Service.

Courts agree that "the law does not require a person to know the exact date that his sentence will begin." *Buide–Gomez,* 744 F.2d at 783 (citations omitted). In *Buide–Gomez,* the Eleventh Circuit Court of Appeals considered the plight of Cuban refugees who were to be imprisoned following their release from administrative detention. The court stated that the defendants were in "the same situation as defendants whose sentences run consecutively to one or more other sentences not yet completed." *Id.* The court noted that "a defendant whose sentence is set to run consecutively to one or more life sentences does not know when, if ever, he will be paroled and thus cannot be certain when, if ever, he will commence service of the consecutive sentence." *Id.* at 783–84. The court concluded that the defendant's indefinite term of administrative detention—which resulted in an inexact date of incarceration for their still-to-be-served prison sentences—did not render their sentences so indefinite as to be illegal.

Nancy Melody's situation resembles that of the defendants in *Buide–Gomez*—that is, she did not know the exact date of her incarceration. However, she had a benefit that those defendants, as well as the defendant in *Golden*, did not have—the district court did not leave Nancy Melody wondering when, if ever, she would be incarcerated. From the outset, she knew that her sentence would begin when her husband's incarceration ended—a sufficiently clear benchmark from which to define and determine her period of incarceration.[2] We thus hold that the stay did not affect the "definiteness" of Nancy Melody's sentence so as to render it illegal.

■ We also do not believe that her sentence is improper because the district court ordered it to run consecutive to her husband's sentence. Contrary to Nancy Melody's assertions, she is not being required impermissibly "to pay the penalty or serve the term of a co-defendant...." *Fiore v. United States*, 696 F.2d 205, 208 (2d Cir. 1982).

*Fiore* addressed a situation where a defendant-appellant could not be required to pay a fine of a co-defendant—as a condition of his own probation under 18 U.S.C. § 3651—merely because the co-defendant was a closely-held corporation and the defendant-appellant was the president, secretary, sole-stockholder, and only full-time employee of the corporation. *Id.* at 208. Nancy Melody clearly is not being required to serve the sentence of a co-defendant—because of the stay, she was free while her husband was in prison.

■ Finally, Nancy Melody argues that her sentence is improper because its de-

layed execution offends "fundamental common law and constitutional principles." She first discusses a common law rule that a defendant ordinarily cannot be required to serve his sentence in installments—that is, a prisoner normally should serve his sentence continuously once he is imprisoned. *See, e.g., Cox v. United States*, 551 F.2d 1096 (7th Cir.1977). Because Nancy Melody admits that her sentence is to be served without interruption once it commences,[3] discussion of this purported rule is unnecessary.

■ She then argues that her sentence is improper because it violates the principles underlying a defendant's right to speedy trial under the sixth amendment. She does grudgingly admit that because she has already been sentenced her speedy trial and sentencing rights may not have been infringed. However, she believes that the failure to execute her sentence promptly violates the spirit of the sixth amendment, if not the letter.[4]

We begin by noting that Nancy Melody has not cited a case supporting her assertion of a post-sentencing sixth amendment right. In fact, the "Supreme Court has not yet decided whether the sixth amendment encompasses the sentencing phase of a criminal trial," *United States v. Martinez*, 837 F.2d 861, 866 (9th Cir.1988), let alone the execution of the sentence. Some courts have assumed *arguendo* that the *imposition* of sentence may be within the speedy trial guarantee. *See, e.g., United States v. Vague*, 697 F.2d 805, 807 (7th Cir.1983) (emphasis added) ("It would be inconsistent with the spirit of the Sixth Amendment and the Speedy Trial Act to

---

**2.** Once established, of course, the commencement of any term of incarceration is subject to change and modification for a wide variety of reasons. Here, a modification occurred because of the death of Thomas Melody.

**3.** In her brief, Nancy Melody admits that "the sentence in this case is to be served without interruption once it commences...." Nevertheless, she asserts that the stay violates the "common law rule" by postponing the date of her imprisonment. She fails to cite any authority to support the proposition that her sentence is being served in installments merely because her

date of incarceration was delayed following sentencing.

**4.** In her brief, Nancy Melody states: "Nancy, of course, has already been sentenced, so technically her speedy trial and sentencing rights may not have been infringed. But the right to speedy sentencing is of little value if it is not accompanied by a right to serve the sentence imposed within a reasonable time. The prejudice to the defendant is no less if it comes after formal pronouncement of sentence rather than before."

encourage a district judge ... to postpone sentencing matters...."). *See also, e.g., Tinghitella v. State of Calif.*, 718 F.2d 308, 312 (9th Cir.1983); *United States v. Merrival*, 600 F.2d 717 (8th Cir.1979); *United States v. Campisi*, 583 F.2d 692 (3d Cir. 1978). However, Nancy Melody has not cited, and our own research has not revealed, a case which has held that a defendant is entitled to speedy trial protection in the *execution* of an existing sentence.

In *Martinez*, the Ninth Circuit Court of Appeals addressed the constitutional concerns involved in the delayed execution of a sentence. In that case, a defendant was convicted of obstruction of justice and was sentenced to four-years imprisonment. The defendant was allowed to remain free on bond pending his appeal. The court of appeals affirmed his conviction which the district court entered into the record at a hearing. However, the court failed to order the defendant to report to the custody of the Attorney General to begin serving his sentence, and no commitment order was entered.

Approximately seven and one-half years later, the FBI discovered that the defendant had never served his sentence. The government subsequently filed a motion for an order requiring the defendant to begin serving his sentence. After a court conference, the defendant was ordered to report to the Bureau of Prisons to begin service of his sentence.

The defendant brought an action arguing that the delay in the execution of his sentence violated his sixth amendment right to a speedy trial. Without holding that a defendant in fact has such a right, the court reviewed the defendant's arguments. The court first held that the defendant had waived any such right (if one in fact existed) because he had not made a demand for speedy trial—that is, he had not requested that the execution of his sentence begin promptly. 837 F.2d at 866.

Nevertheless, the court applied a "full-fledged sixth amendment balancing test" to hold that the defendant's "assumed" rights were not infringed. The court weighed four factors: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) prejudice to the defendant." 837 F.2d at 867 (citation omitted). The court noted that the delay was "extraordinary" and "was through no fault of his own," but that the defendant had not asserted his right. Further, the court noted that the defendant was not prejudiced.[5] Thus, the court denied the defendant's constitutional claim.

Although we seriously doubt that any court would find such a right once a sentence in fact has been imposed—a conclusion with which Nancy Melody apparently agrees given her failure to pursue the contention once it was raised—we likewise need not address the existence of a sixth amendment speedy trial right here.

If we assume that such a right exists— which we expressly refuse to find within the sixth amendment and will assume for purposes of discussion only—we conclude that an application of the four-part test discussed above does not render Nancy Melody's sentence invalid or unconstitutional.

First, we do not believe that the stay in this case was so beyond the norm as to be "extraordinary," even though it was unusual. It was a sentence tailored to fit the circumstances. Second, the basis for the delay is not unreasonable. Apparently, the district court wanted to honor Nancy Melody's implicit plea to maintain her family unit in any possible manner. Unfortunately, her husband's death prevented the district court from fulfilling her wish ultimately.

Third, as we noted above, Nancy Melody did not assert any "speedy trial right" at any time prior to her husband's death, even

---

**5.** The three interests that should be considered to determine prejudice are: "(1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Martinez,* 837 F.2d at 867 (citation omitted). Obviously, these interests are not infringed in the post-sentencing assertion of an alleged sixth amendment right.

though she filed a Rule 35(b) motion for reduction of sentence during the stay's existence. She was content to remain free during the period in which the stay was in effect and chose to challenge the legality of the stay only when it was about to be lifted.[6] Finally, as the *Martinez* court noted, the pretrial interests involved in the fourth prong of the test are not involved here—a fact which also strongly undercuts any claim that the sixth amendment provides a right to speedy execution of sentence. For these reasons, we hold that the stay did not violate Nancy Melody's sixth amendment rights in any manner—even if we would have held that she did have a right to speedy execution of sentence.

To summarize, we hold that the stay of Nancy Melody's sentence did not render that sentence illegal. First, because the district court did not "suspend" her sentence, but merely stayed its execution, 18 U.S.C. § 3651 does not apply here. Further, we hold that her sentence was not indefinite so as to render it illegal. Finally, because Nancy Melody failed to demonstrate how any "fundamental common law and constitutional principles" in fact were offended by the stay, we hold that the stay—while unusual—did not violate any of her fundamental constitutional rights.

We also agree with the district judge who in his order stated that, even if the stay rendered the sentence illegal, the remedy would be to lift the stay. Had we found her sentence to be illegal, and had the stay still been in effect, we would have ordered that the stay be lifted and her sentence to commence immediately.[7]

Finally, we note that had Nancy Melody been entitled to resentencing, she would

not have received credit for the time spent awaiting execution of the sentence. Courts routinely hold that a defendant is not entitled to credit toward his original sentence unless he in fact was incarcerated during the period for which he claims the credit. *See, e.g., Golden,* 795 F.2d at 21 (agreeing that the defendant's sentence was illegal, but adding that "[g]enerally, a defendant is not entitled to credit for time spent released on his own recognizance prior to entering prison"); *Scott v. United States,* 434 F.2d 11, 23 (5th Cir.1970) (stating that "the mere lapse of time ..., without petitioner undergoing any actual imprisonment to which he was sentenced ..., does not constitute service of that sentence").

### B. *Motion for Reduction of Sentence*

▉ Nancy Melody also appeals the district court's decision to deny her request for probation in lieu of incarceration. In her motion for reduction of sentence, Nancy Melody admitted that "the time for modifying [her] sentence under Rule 35(b) of the Federal Rules of Criminal Procedure [had] ... elapsed...." *See, e.g., United States v. Hill,* 826 F.2d 507, 507–08 (7th Cir.1987). Nevertheless, she asserted that the district court had jurisdiction under 18 U.S.C. § 3651 to suspend her sentence and impose probation prior to execution of her sentence. She then argued that her sentence was more severe than that imposed upon her husband and that dramatic changes in her circumstances had occurred since she was sentenced. For disposition, the district court assumed that it possessed jurisdiction and denied her motion on its merits.

---

6. In her original Rule 35(b) motion filed on July 25, 1984, Nancy Melody did not challenge the propriety of the stay. Apparently, when she filed her "February 24, 1986 Supplemental Material for Motion Pursuant to Rule 35 Previously Filed," she did contend that the stay doubled her sentence from four to eight years and "caused severe mental distress" to both her and her daughters. However, she never claimed that her sentence in fact was illegal.

7. Ordinarily, if an appellate court holds that a sentence is illegal, that court is required to vacate the sentence and remand the cause to the

district court for resentencing. *See, e.g., Makres,* 851 F.2d at 1018 (citations omitted). However, we have noted in the past, that "[w]here a sentence has been imposed in violation of a constitutional or statutory right, the appellate court may in a proper case 'correct the sentence rather than remanding the case for the execution of [a] ministerial act.'" *United States v. Mathis,* 579 F.2d 415, 420 (7th Cir.1978). Because the district court clearly expressed an intent for Nancy Melody to serve the original four-year sentence, a decision to vacate the stay would merely involve a ministerial act.

This court has not considered whether Rule 35(b)'s 120–day jurisdictional limitation is absolute or whether a motion for reduction of sentence framed in terms of 18 U.S.C. § 3651 may be filed at any time prior to the date of incarceration. Nevertheless, we agree with Judge Grady that he probably did not have jurisdiction to hear Nancy Melody's motion for reduction of sentence. We believe that Rule 35(b) does control the period in which all motions to reduce a sentence must be filed, including requests for probation. *See, e.g., United States v. Jackson,* 802 F.2d 712 (4th Cir. 1986), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1568, 94 L.Ed.2d 760 (1987) (holding that Rule 35(b)'s time limit is absolute, regardless of whether the motion for reduction of sentence is framed under Rule 35(b) or 18 U.S.C. § 3651). *But see United States v. Karp,* 764 F.2d 613 (9th Cir.1985) (holding that a court has authority to order probation under 18 U.S.C. § 3651 at any time before the defendant is incarcerated, regardless of Rule 35(b)'s 120–day jurisdictional limitation). However, we need not decide this issue definitively to resolve this case.

We hold that Nancy Melody has failed to demonstrate that the district court abused its discretion to deny her last-minute motion for reduction of sentence. *See, e.g., United States v. Rovetuso,* 840 F.2d 363, 365 (7th Cir.1987); *United States v. Galssey,* 715 F.2d 352, 354 (7th Cir.1983); *United States v. Davies,* 683 F.2d 1052, 1054 (7th Cir.1982). An abuse of discretion occurs only when no reasonable person could adopt the position of the trial court. *United States v. Santiago,* 826 F.2d 499, 505 (7th Cir.1987) (discussing the standard in a bail forfeiture context). In many instances, "a timely denial [of a Rule 35 motion] ... will be, for all practical purposes, unreviewable." *Rovetuso,* 840 F.2d at 365 (quoting *United States v. Kajevic,* 711 F.2d 767, 771 (7th Cir.1983)).

We think that the district court properly exercised its discretion to deny Nancy Melody's request for probation in lieu of incarceration. The evidence at trial was overwhelming against Nancy Melody. Furthermore, the length of the sentence imposed was not inconsistent with the nature of the crimes committed—that is, her role in defrauding the approximately eighty-five farmers and the Consumer Credit Corporation of over $1.5 million and her lack of remorse justifies the length of imprisonment ordered by the district court. The death of her husband certainly was a factor to be weighed in determining whether the sentence should be executed. However, the district judge who heard the evidence and had the defendant before him stands in the best position to determine the impact of changed circumstances. We conclude that the district court considered all relevant factors and properly denied her motion.

## III. *CONCLUSION*

We hold that the stay of execution of Nancy Melody's sentence did not render her sentence illegal or violate "fundamental common law and constitutional principles." First, because the district court did not "suspend" her sentence, but merely "stayed" her sentence, 18 U.S.C. § 3651 does not apply. Second, her sentence was not wholly indefinite as to the time in which it is to be served. Finally, we agree with Nancy Melody's implicit admissions that her sentence violates no fundamental common law rules.

We also believe that the district court lacked jurisdiction to consider Nancy Melody's motion for reduction of sentence because she failed to bring the motion within the 120–day limitation period contemplated by Rule 35(b). We do hold that even if the district court did have jurisdiction to consider her motion upon its merits the district court did not abuse its discretion to deny her last minute request for leniency. The district court's decision denying Nancy Melody's relief from sentence is AFFIRMED.