**UNITED STATES of America, Plaintiff,**

v.

**Eugene BEAVERS, Defendant.**

**No. 88–10066–02.**

United States District Court,
C.D. Illinois,
Peoria Division.

July 12, 1990.

Bradley Murphy, Asst. U.S. Atty., Peoria, Ill., for plaintiff.

Eugene Beavers, pro se.

### ORDER

MIHM, District Judge.

Eugene Beavers has filed a Motion under 18 U.S.C. § 3585 requesting that the Court credit his sentence with the time he spent on bond between his arrest and sentencing from November 22, 1988 through October 16, 1989.

Beavers argues that the term "in custody" in § 3585 should be ascribed a meaning identical to that phrase under the habeas corpus statutes, 28 U.S.C. §§ 2254 and 2255. By refusing to credit him with this time, Mr. Beavers asserts that the Attorney General has extended his sentence without due process, and, by applying it differently to those persons released on bond than to those suffering from other restraints on their liberty, the Attorney General has violated his equal protection rights.

Before considering the merits of Mr. Beavers' arguments, however, his standing to raise those issues must be examined. Under § 3568, where the sentence imposed plus the time spent in presentence custody totalled less than the maximum sentence provided for that offense, there is a presumption that the sentencing judge had given credit for any presentence custody. *Holt v. United States*, 422 F.2d 822 (7th Cir.1970). *Accord, Parker v. Estelle*, 498 F.2d 625 (5th Cir.1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1974); *Trimmings v. Henderson*, 498 F.2d 86 (5th Cir.1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1135, 43 L.Ed.2d 405 (1974); *Swift v. United States*, 436 F.2d 390 (8th Cir.1970), *cert. denied*, 403 U.S. 920, 91 S.Ct. 2237, 29 L.Ed.2d 698 (1970). If Mr. Beavers' sentence was for less than the maximum, he would not have had standing to challenge this sentence under § 3568. *Swift*, 436 F.2d 390, 392–93. The Court is aware of no reason for questions of standing to be any different under § 3585 and

therefore finds that the presumption attaches under the same circumstances as under § 3568.

Mr. Beavers was convicted under 21 U.S.C. § 841(a)(1) and was sentenced to 33 months incarceration, six years supervised release and a $7,500 fine. The possible penalties for violation of § 841(a)(1), set out in § 841(b), vary from five years to life with fines up to $5,000,000, depending on the type and quantity of controlled substance involved. Mr. Beavers' conviction involved 367.42 grams of cocaine. Under § 841(b)(1)(C), the maximum sentence he could have received was 20 years. His actual sentence is far less than that. As a result, the presumption attaches and Mr. Beavers has no standing under § 3585.

■ Even if Plaintiff had standing to raise these issues, however, his arguments would fail. 18 U.S.C. § 3585 replaced 18 U.S.C. § 3568 pursuant to Pub.L. 98–473. The repealed statute provided in pertinent part:

> The sentence of imprisonment ... shall commence to run from the date on which such person is received at the penitentiary ... for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent *in custody* in connection with the offense or acts for which the sentence was imposed. (Emphasis added).

Section 3585 provides that:

> A sentence to a term of imprisonment commences on the date that defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served ... A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in *official detention* prior to the date the sentence commences.... (Emphasis added).

All the circuit courts which interpreted § 3568 concluded that "in custody" referred to "detention or imprisonment in a place of confinement and ... not ... to the stipulations imposed when a defendant is at large on conditional release." *United States v. Peterson,* 507 F.2d 1191, 1192 (D.C.Cir.1974). *Accord, United States v. Figueroa,* 828 F.2d 70, 71 (1st Cir.1987); *Villaime v. U.S. Department of Justice,* 804 F.2d 498, 499 (8th Cir.1986), *cert. denied,* 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 514 (1987); *Ortega v. United States,* 510 F.2d 412, 413 (10th Cir.1975); *Polakoff v. United States,* 489 F.2d 727, 730 (5th Cir.1974). *Cf., United States v. Robles,* 563 F.2d 1308, 1309 (9th Cir.1977), *cert. denied,* 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978) (bail pending appeal); *Sica v. United States,* 454 F.2d 281 (9th Cir.1971) (bail pending appeal). *See also, United States v. Golden,* 795 F.2d 19, 21 (3rd Cir.1986) (court agreed that sentence at issue was illegal but added that "generally, a defendant is not entitled to credit for time spent released on his own recognizance prior to entering prison").

This Court adopted that interpretation of "in custody" under § 3568 in *Hatterman v. United States of America,* Docket No. 88–1323 (C.D.Ill. Jan. 5, 1989), finding that Mr. Hatterman's reliance upon *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), and other cases interpreting the "in custody" requirement of habeas corpus statutes was misplaced. The Supreme Court in *Hensley* held only that a person released on personal recognizance is in custody for purposes of habeas corpus proceedings. *Id.* at 349, 93 S.Ct. at 1573–74. This holding was never extended to § 3568. *E.g., Cerella v. Hanberry,* 650 F.2d 606, 607 (5th Cir.1981), *cert. denied,* 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981); *Ortega v. United States,* 510 F.2d at 413; *Villaime v. United States Department of Justice,* 804 F.2d at 499.

The replacement of § 3568 with § 3585 does not change that result. If anything, § 3585 clarifies the circumstances under which credit is—and is not—to be given. Substitution of the term "in official detention" evidences Congress' approval of case law holding that "in custody" means something different for § 3585 than it does under habeas corpus.

There is nothing in the legislative history of § 3585 which indicates to the contrary; in fact, it clearly supports a finding that Congress intended to adopt the unanimous case law discussed earlier in this opinion. For example, the legislative history repeats the term "in custody" without any indication that case law interpreting that term within the context of § 3568 was being altered by the change. United States Cong. and Admin.News, 98th Cong.2d Sess. 1984 (Vol. 4, p. 3311).

The congressional discussion of the new bill, § 3585, indicates an intent only to clarify that a sentence is to begin from the date a prisoner is committed to a facility awaiting transportation to another facility. It indicates no intent whatsoever to expand or contract the circumstances under which a prisoner is entitled to receive credit for time spent "in custody" or "in official detention."

The policy discussion contained in *Hatterman* remains relevant to the amended statute. The Court does not deem *Hatterman* to have been overruled or mooted in its entirety by the amendment to the statute. Rather, the amendment clarifies Congress' intent to codify in § 3585 the statutory interpretation contained in *Hatterman* and other case law interpreting § 3568.

The difference in interpretation accorded the same phrase in different statutes is consistent with the relative statutory language and purpose of these statutes. The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty. *Hensley*, 411 U.S. at 351, 93 S.Ct. at 1574–75. The custody requirement of § 3585, however, was designed (as was § 3568 before it) to authorize inclusion in the period of incarceration any time spent in a local institution while awaiting transportation to the penal institution and thus prevent judges from frustrating the will of Congress by adding periods of time to the actual sentence imposed resulting in more time served than the statutory maximum. In other words, it simply establishes a firm date for the commencement of a sentence. *United States v. Lid-*

*dy,* 510 F.2d 669, *cert. denied,* 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1974); *Siegel v. United States,* 436 F.2d 92 (1970); *Sawyer v. United States,* 376 F.2d 615 (1967). A secondary purpose of the statute was to give credit for time spent in custody while awaiting trial where the defendant was originally arrested and held in custody on a state charge and then eventually turned over to federal government for prosecution. *Bell v. District of Columbia Department of Corrections,* 403 A.2d 330 (1979).

Therefore, considering the language and the history of the statute, this Court finds that the "in custody" requirement of § 3585 applies only to actual physical incarceration and does not extend to persons on bond awaiting trial or sentencing. However, it is possible for a correct statutory interpretation to violate constitutional requirements. Therefore, it is necessary to consider Mr. Beavers' constitutional arguments as well.

■ The gist of Mr. Beavers' equal protection argument is that the class of persons on bond must be treated identically to the class of persons on probation or parole, because the restrictions placed on their liberty are identical. Because these classifications are not inherently a suspect class and do not infringe a fundamental right, the burden is on the Plaintiff to show that there is no legitimate state interest being furthered by the differing treatment. He fails to meet that burden. Instead, he attempts to show that there are rational reasons for treating the two classes the same, a showing which is insufficient to state an equal protection problem.

It is clear to this Court that a statute can rationally and constitutionally differentiate between these two classes. The concerns addressed by legislation dealing with persons on probation or parole are entirely separate from the concerns addressed in statutes permitting release on bond pending trial. In the case of release on bond, the state's interest is neither punishment nor guilt. To equate the two situations would ultimately require a finding that bond restrictions would thus never be per-

missible prior to conviction. This Court is thoroughly unconvinced that equal protection mandates such a finding.

Likewise, Mr. Beavers fails to set forth any violation of due process. He asserts that, by refusing the credit, the Attorney General has lengthened his sentence. In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court stated, "In evaluating the constitutionality of conditions or restrictions of pretrial detention on liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee." *Id.* at 535, 99 S.Ct. at 1872. The mere fact that some restrictions are placed upon the detainee does not convert the restrictions into punishment. *Id.* at 537, 99 S.Ct. at 1873. Restraints reasonably imposed for the purpose of ensuring the detainee's presence at trial and reasonably related to that purpose do not rise to the level of punishment.

Although the Court in *Wolfish* was discussing actual detention and not release on bond, the principles are applicable in the latter context as well. The restrictions placed upon Mr. Beavers did not amount to punishment. They were reasonable, considered limitations upon his freedom of movement designed solely for the purpose of ensuring his presence at the trial and the sentencing hearing. There was no intent to punish; the restrictions were merely an "incident of a legitimate, nonpunitive and governmental objective." *Wolfish*, 441 U.S. at 539, 99 S.Ct. at 1874.

Absent punishment, it cannot be said that Mr. Beavers' sentence has been lengthened. It necessarily follows that refusal to credit for time spent on bond does not violate the due process clause.

For each of the reasons stated herein, the Court finds no merit in Mr. Beavers' Motion. Accordingly, the Motion is DENIED.