**Ziya K. KORAY, Appellant**

v.

**Frank SIZER; United States Bureau of Prisons; Attorney General of the United States.**

No. 93–7357.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1 March 4, 1994.

Decided April 25, 1994.

Ziya K. Koray, pro se.

David M. Barasch, U.S. Atty., Frederick E. Martin, Robert J. DeSousa, Asst. U.S. Attys., Lewisburg, PA, for appellees.

Before: SLOVITER, Chief Judge
COWEN and LEWIS, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

### I.

On April 23, 1991, Ziya Koray was arrested for laundering monetary instruments in violation of 18 U.S.C. § 1956(a)(1). On June 18, 1991, Koray entered a guilty plea. On June 25, 1991, a federal Magistrate Judge released Koray pursuant to 18 U.S.C. § 3142(c) & (h) (1988 & Supp. III 1991) into the custody of the Pretrial Services Agency and ordered him to be "confined to the premises of [the Volunteers of America 'halfway house type facility'] and shall not be authorized to leave for any reason unless accompanied by Special Agent Dennis Bass." App. at

17. On October 21, 1991, the district court sentenced Koray to 41 months imprisonment with two years of supervised release. Koray remained at the Volunteers of America halfway house until November 25, 1991, when he reported to the Allenwood Federal Prison Camp in Montgomery, Pennsylvania.

Koray received a credit of 64 days for the time spent in jail between April 23 and June 25 pursuant to 18 U.S.C. § 3585 (1988). However, the Bureau of Prisons declined to credit him for the approximately 150 days he was confined to the Volunteers of America facility. After exhausting his administrative remedies, Koray sought a writ of habeas corpus from the district court for the Middle District of Pennsylvania on October 15, 1992, arguing that the Bureau misapplied the statute in not crediting him for the time spent while "released" with restrictive conditions. The district court found that restrictive release conditions can never amount to "official detention" under section 3585(b) and denied the petition for a writ of habeas corpus. Koray filed this timely appeal. The district court had jurisdiction under 28 U.S.C. § 2241 (1988). We have appellate jurisdiction under 28 U.S.C. § 1291 (1988) and review this question of statutory interpretation *de novo.*[1] *See Barden v. Keohane,* 921 F.2d 476, 479 (3d Cir.1990).

### II.

Credit for prior custody is determined by 18 U.S.C. § 3585(b), which provides:

**Credit for prior custody.**—A defendant shall be given credit toward the service of a term of imprisonment for any time he has *spent in official detention* prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

---

1. In the district court, Koray also argued that the statute violated equal protection by treating pretrial defendants differently than post-sentenced defendants. The district court rejected this argument. Koray does not raise his equal protection argument on appeal, and we do not address it.

(emphasis added). The relevant question is whether "official detention" includes a court order of confinement in a facility such as a halfway house as a condition of bail.

### A.

Prior to 1960, sentencing courts gave credit toward the sentence imposed for time spent in pre-sentence custody. *See Soyka v. Alldredge*, 481 F.2d 303, 305 & n. 6 (3d Cir.1973). However, courts lacked authority to give such credit to a defendant sentenced to a statutory mandatory minimum, *see Stapf v. United States*, 367 F.2d 326, 328 (D.C.Cir. 1966), and the number of such statutes markedly increased. To avoid the disparity between those sentenced under a mandatory minimum and those who were not, and also between those granted bail and those who were not, Congress amended the statute in 1960 to grant credit for pre-sentence confinement. Codified at 18 U.S.C. § 3568, the provision required that "the Attorney General shall give any [person convicted] credit toward service of his sentence for any days spent in custody prior to the imposition of sentence by the sentencing court for want of bail set for the offense under which sentence was imposed where the statute requires the imposition of a minimum mandatory sentence." Pub.L. No. 86–691, § 1(a), 74 Stat. 738, 738 (1960).

This provision was amended in 1966 to expand the credit provisions, removing the requirement that credit only be granted in cases of mandatory minimums, increasing the offenses which could be counted for credit and removing any mention of bail. It required that the "Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." Pub.L. No. 89–465, § 4, 80 Stat. 214, 217 (1966) (codified at 18 U.S.C. § 3568 (1982)).

In the Sentencing Reform Act of 1984, Congress rewrote section 3568 and recodified it as section 3585(b). *See* Pub.L. No. 98–473, 98 Stat. 1998, 2001 (1984). "Congress entirely rewrote § 3568 when it changed it to its present form in § 3585(b). It rearranged its clauses, rephrased its central idea in the passive voice, and more than doubled its length." *United States v. Wilson*, —— U.S. ——, ——, 112 S.Ct. 1351, 1355, 117 L.Ed.2d 593 (1992). "Congress altered § 3568 in at least three ways when it enacted § 3585(b). First, Congress replaced the term 'custody' with the term 'official detention.' Second, Congress made clear that a defendant could not receive a double credit for his detention time. Third, Congress enlarged the class of defendants eligible to receive credit." *Id.* —— U.S. at —— – ——, 112 S.Ct. at 1355–56.

### B.

We have had few opportunities to consider the scope of either section 3585 or its predecessor. This court recently declined to decide the question presently before us because the defendant had not exhausted his administrative remedies. *See United States v. Brann*, 990 F.2d 98, 103–04 (3d Cir.1993).

The only prior decision in which this court spoke to the issue of credit for time outside of prison was *United States v. Golden*, 795 F.2d 19 (3d Cir.1986), which concerned time spent in the Federal Witness Protection Program rather than in a halfway house. In *Golden*, the defendant entered into an agreement to plead guilty to two lesser counts and to assist the government in its investigation and prosecution of drug-related crimes. The government agreed to place him in the Federal Witness Protection Program. The district court sentenced the defendant to eight years and ordered "that the defendant is permitted to self-report at such time and place when notified by the United States Marshal's Office." *Id.* at 20 (quotation omitted). The defendant then remained at large in the Witness Protection Program until the Marshal ordered him to report to prison twenty-one months later. Defendant appealed, claiming that the sentence was illegal because the district court failed to specify when it would begin. We agreed, and remanded for resentencing.

We rejected the defendant's claim that he was entitled as a matter of law to credit for the time he spent in the Witness Protection Program, stating "[g]enerally, a defendant is not entitled to credit for time spent released on his own recognizance prior to entering

prison." *Id.* at 21. Therefore, we rejected the defendant's contention that failure to credit his sentence for time spent in the Witness Protection Program was a breach of the plea agreement, stating:

> The plea agreement specifically provided that he would be given credit for periods of incarceration prior to sentencing. By statute, credit for time prior to commencement of the sentence is given for time spent in custody. However, custody has been defined as actual incarceration. *See United States v. Ortega,* 510 F.2d 412 (10th Cir. 1975). While restrictions were placed on [the defendant], the district court was not required to equate his life in the Witness Protection Program with incarceration.

*Id.*

On the other hand, we suggested that the issue of credit was one for the discretion of the district court, stating that on resentencing the district court "may determine that [defendant] is entitled to a credit for some portion of the twenty-one months between the time [he] was sentenced and the time he was actually ordered to report to prison." *Id.* Thus, we may have been suggesting that some of the time the defendant was in the Witness Protection Program was more restrictive than mere recognizance and therefore could be entitled to credit.

Finally, although not directly on point, we considered the issue of comparability between prison and a halfway house in *United States v. Parker,* 902 F.2d 221 (3d Cir.1990). Defendant appealed from his sentence of six months of confinement in a community facility on the ground that it did not represent a departure as recommended by the government because six months in the community center was equivalent to the minimum sentence under the guidelines. We disagreed, stating, "[w]e think it clear that a period of confinement as a condition of probation, subject to a defendant's being released to go to work, cannot possibly be equated with an equivalent period of imprisonment." *Id.* at 222. *Parker* presents less assistance than *Golden,* and *Golden* is itself not directly relevant because of the marked fact difference.

## C.

The other Courts of Appeals to have considered this issue are divided. Although most have concluded that section 3585, like its predecessor section 3568, does not require the Bureau to credit presentenced defendants whose bail conditions allowed them to be confined outside of Bureau of Prison facilities, that conclusion was not reached without dissent. *See, e.g., Moreland v. United States,* 968 F.2d 655, 659–60 (8th Cir.) (en banc) (plurality) (with one judge concurring in judgment and five judges dissenting), *cert. denied,* —— U.S. ——, 113 S.Ct. 675, 121 L.Ed.2d 598 (1992); *United States v. Becak,* 954 F.2d 386, 387–88 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2286, 119 L.Ed.2d 211 (1992); *Spinola v. United States,* 941 F.2d 1528, 1529 (11th Cir.1991); *Randall v. Whelan,* 938 F.2d 522, 525 (4th Cir.1991) (with Butzner, J., dissenting); *United States v. Insley,* 927 F.2d 185, 186 (4th Cir.1991); *United States v. Woods,* 888 F.2d 653, 655–56 (10th Cir.1989), *cert. denied,* 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990); *Ramsey v. Brennan,* 878 F.2d 995, 996 (7th Cir.1989); *United States v. Smith,* 869 F.2d 835, 837 (5th Cir.1989); *United States v. Figueroa,* 828 F.2d 70, 71 (1st Cir.1987) (per curiam); *see also United States v. Westmoreland,* 974 F.2d 736, 740–45 (6th Cir.1992) (Engel, J., dissenting), *cert. denied,* —— U.S. ——, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993). In addition, the Ninth Circuit has rejected the conclusion reached by the other circuits, holding instead that when conditions of release approach those of incarceration, a detainee is in "official detention" for purposes of section 3585. *See Fraley v. United States Bureau of Prisons,* 1 F.3d 924, 925–26 (9th Cir.1993); *Lahey v. Floyd,* 992 F.2d 234, 235–36 (9th Cir.1993); *Mills v. Taylor,* 967 F.2d 1397, 1400–01 (9th Cir.1992); *Grady v. Crabtree,* 958 F.2d 874, 875 (9th Cir.1992) (per curiam); *Brown v. Rison,* 895 F.2d 533, 536 (9th Cir.1990).

In reaching the decision that no credit should be awarded, some of the courts have deferred to the interpretation of the statute used by the Bureau of Prisons. *See Moreland,* 968 F.2d at 658; *Randall,* 938 F.2d at 525 & n. 3; *Ramsey,* 878 F.2d at 996 (Bu-

reau's interpretation "is a reasonable opinion by officials having greater knowledge of federal penal policy than we judges have, so we are inclined to defer to it.").

■ It is far from clear that the Bureau of Prisons' determination that section 3585 does not require credit be granted when a court "releases" a pre-sentenced defendant to a halfway house should be granted the substantial deference that *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), requires to be given to an agency's own interpretation of the statute it administers. The Bureau's interpretation is recorded in its "Program Statements," which are merely internal agency guidelines and may be altered by the Bureau at will. *See* Bureau of Prisons, Program Statement 1221.02.1.2.1 (Apr. 12, 1993) (describing how Program Statements are promulgated and modified). As such, it is entitled to a lesser level of deference from the courts than are published regulations subject to the rigors of the Administrative Procedures Act, including public notice and comment. *See FLRA v. United States Dep't of Navy,* 966 F.2d 747, 762 & n. 14 (3d Cir.1992) (in banc); *Marshall v. Rosemont, Inc.,* 584 F.2d 319, 321 (9th Cir.1978).

■ Even when we accord the Bureau's interpretation some level of deference, we must examine whether the Bureau engaged in the necessary "reasoned analysis" of this issue. *See Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.,* 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (revision of regulations requires "reasoned analysis"). In that connection, it is difficult to ignore the fact that the rationale given by the Bureau for its refusal to accord credit for time spent by a pretrial detainee in a halfway house is different under section 3568 than it is under the currently applicable section 3585. When interpreting section 3568, the Bureau rationalized its decision not to accord credit on the basis of the degree of restraint. Thus it distinguished between "[t]ime spent in residence in a *residential community center*" where "the degree of restraint ... is not sufficient restraint to constitute custody" and "time spent in a *jail-type* facility ... as a condition of bail or

bond" which was "creditable as jail time because of the greater degree of restraint." Bureau of Prisons, Program Statement No. 5880.24(5)(b)(5) (Sept. 5, 1979), *quoted in Johnson v. Smith,* 696 F.2d 1334, 1336 (11th Cir.1983).

Although the Bureau still retains this functional analysis for defendants governed by section 3568, *see* Bureau of Prisons, Program Statement 5880.30(7)(b)(5) (July 16, 1993), it uses a different approach for section 3585. Now it focuses on whether the defendant has been "released" to pretrial services or "detained" by the Attorney General. *See* 18 U.S.C. § 3141(a) (1988) ("A judicial officer authorized to order the arrest of a person under section 3041 of this title before whom an arrested person is brought shall order that such person be released or detained, pending judicial proceedings, under this chapter.").

The Program's current position is that "[t]ime spent in residence in a community corrections center as a result of the Pretrial Services Act of 1982 (18 U.S.C. § 3152–3154), or as a result of a condition of bail or bond (18 U.S.C. § 3141–3143), is not creditable as presentence time." Bureau of Prisons, Program Statement 5880.28(c) (Feb. 21, 1992). It has determined that "[a] condition of bail or bond which is 'highly restrictive,' and that includes 'house arrest', 'electronic monitoring' or 'home confinement'; or such as requiring the defendant to report daily to the U.S. Marshal, U.S. Probation Service, or other person; is not considered as time in official detention." *Id.* The rationale given by the Bureau is that "[s]uch a defendant is not subject to the discretion of the U.S. Attorney General, the Bureau of Prisons, or the U.S. Marshals Service, regarding participation, placement, or subsequent return to a more secure environment, and therefore is not in a status which would indicate an award of credit is appropriate." *Id.* The Bureau also believes that "the government may not prosecute for escape in the case of an unauthorized absence in such cases, as the person has been lawfully *released* from 'official detention.'" *Id.*

The distinction in approaches is highly significant for Koray. Under the earlier ratio-

nale he might be able to convince the Bureau or a court that his conditions of confinement in the Volunteers of America facility were similar to those in a "jail-type facility" and that credit was appropriate notwithstanding the Bureau's generally applicable rule denying credit for time spent in a halfway house. Under the current rationale, Koray would not have that opportunity because he is clearly in the custody of pretrial services rather than the Attorney General.

In order to determine whether the Bureau's interpretation withstands "reasoned analysis" we must examine whether the intervening statutory change from "custody" to "official detention" can carry the weight of this new interpretation. The legislative history of the change is both lengthy and unenlightening. While we describe it in the margin, we note that Congress has used the terms "custody," "official custody," "confinement" and "official detention" interchangeably in describing this provision, as would a normal English speaker.[2] Indeed, the title of the subsection remains "Credit for Prior Custody." (emphasis added). *See INS v. Na-* *tional Ctr. for Immigrants' Rights, Inc.,* ── U.S. ──, ──, 112 S.Ct. 551, 556, 116 L.Ed.2d 546 (1991) (may use title to construe statute).

■ From this we conclude, as have all the circuits which have considered the issue, that the use of the word "official detention" rather than the word "custody" was not intended to alter the meaning of the statute. *See Moreland,* 968 F.2d at 657–58 n. 6 (plurality); *id.* at 664 (Heaney, J., dissenting); *Mills,* 967 F.2d at 1400; *United States v. Edwards,* 960 F.2d 278, 283 (2d Cir.1992); *Pinedo v. United States,* 955 F.2d 12, 14 (5th Cir.1992); *Becak,* 954 F.2d at 387–88; *Insley,* 927 F.2d at 186; *Woods,* 888 F.2d at 655.

■ It follows that before we accord any substantial deference to the Bureau, we must look to whether the Bureau has articulated any sustainable rationale for reading "official detention" as if it provided "official detention *by the Attorney General or the Bureau of Prisons.*" The plain meaning of the words "official detention" does not require this result; there is nothing in the statute which

---

**2.** The "official detention" language now codified at § 3585 was originally introduced in the 93rd Congress in S. 1, which was a comprehensive effort to revise Title 18 of the United States Code. *See* S. 1, 93d Cong., 1st Sess. (1973). That language remained when the version of the bill was reported out of the Judiciary Committee in the 94th Congress. *See* S. 1, 94th Cong., 1st Sess. (1975). In the only discussion of this section, the Judiciary Committee's Report described the then present federal law, which was § 3568, as providing "that the offender will receive credit for any time spent in custody" and described the proposed language as providing "credit towards the sentence of imprisonment for any time the defendant has spent in *official custody* prior to the date the sentence was imposed." S.Rep. No. 00, 94th Cong., 2d Sess. 926–27 (1976) (emphasis added). The same language of the bill continued throughout revisions in the 95th, 96th and 97th Congress as S. 1437, S. 1722, and S. 1630 respectively. *See* S. 1437, 95th Cong., 1st Sess. (1977); S. 1437, 95th Cong., 2nd Sess. (1978); S. 1722, 96th Cong., 1st Sess. (1979); S. 1630, 97th Cong., 1st Sess. (1981). Moreover, the Judiciary Committee's Report used the same descriptive language concerning this provision each time. *See* S.Rep. No. 605, 95th Cong., 1st Sess. 935–36 (1977); S.Rep. No. 553, 96th Cong., 2d Sess. 996 (1980); S.Rep. No. 307, 97th Cong., 1st Sess. 1049 (1981). Finally, in the 98th Congress, the provision was included in two bills, S. 668 and S. 1762. The Senate Judiciary Committee reported out both these bills with the exact same descrip-

tion of the provision. S.Rep. No. 223, 98th Cong., 1st Sess. 125–26 (1983); S.Rep. No. 225, 98th Cong. 1st Sess. 128–29 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3311–12. The Senate passed S. 1762.

Meanwhile, the House Judiciary Committee which reported out H.R. 6915 tracking the language of the previous Senate bills described the provision as providing "a defendant be given credit toward the service of a term of imprisonment for any time spent in *confinement* before the commencement of the sentence of imprisonment if that time has not been credited against another sentence." H.R.Rep. No. 1396, 96th Cong., 2d Sess. 474 (1980) (emphasis added). In the 98th Congress, the House Judiciary Committee, while rejecting much of what was in S. 1762, proposed its own crime bill which incorporated a provision similar to the Senate's credit provision except that it provided that a "defendant shall be given credit toward the service of a term of imprisonment for any time spent in *custody* before the date on which the term commences." H.R. 6012, 98th Cong., 2d Sess. (1984) (emphasis added). The Judiciary Committee reported that this provision required credit be given for "any time spent in *confinement* before the commencement of the sentence of imprisonment." H.R.Rep. No. 1017, 98th Cong., 2nd Sess. 54 (1984) (emphasis added). The House passed the Senate's version without any changes to the credit provision.

requires or suggests that a defendant must be under the detention of the Bureau. *But see Randall,* 938 F.2d at 525 ("There exists a strong presumption that 'custody' refers to the legal authority of the custodian rather than to actual housing conditions."). A court may "detain" a person as "official[ly]" as the Attorney General. *Cf. United States v. Camarata,* 828 F.2d 974, 981 (3d Cir.1987) (Becker, J., concurring) (defendant on bail "was under the custody of the court, not the Attorney General"), *cert. denied,* 484 U.S. 1069, 108 S.Ct. 1036, 98 L.Ed.2d 1000 (1988).

It is therefore difficult to view Koray's detention as other than "official" since he was put in the "custody" of pretrial services, 18 U.S.C. § 3142(c)(1)(B)(i), and was confined to the halfway house by court order. Although the Bureau notes that only an escape from one of its facilities permits prosecution as an escape from confinement under 18 U.S.C. § 751(a), *see United States v. Baxley,* 982 F.2d 1265, 1269–70 (9th Cir.1992); *United States v. Miranda,* 749 F.Supp. 1062, 1063–64 (D.Colo.1990); *but cf. Ramsey,* 878 F.2d at 996 (dicta), this does not mean that escape from the Volunteers of America facility would have gone unpunished. In fact, Koray's failure to comply with the conditions of his release would be a felony and would have subjected him to what the Bureau concedes is "a more severe punishment." Appellee's Br. at 15 n. 5; *see* 18 U.S.C. §§ 3146(b), 3148(a) (1988); *United States v. George,* 625 F.2d 1081, 1084–85 (3d Cir.1980) (failing to report to U.S. Marshal as required by condition of bail is a felony under the Bail Reform Act).

Moreover, the Bureau itself does not always limit "official detention" to that served under the custody of the Attorney General. In this connection we note that the Bureau has characterized other custody as "constructive federal custody" and has been willing to give presentenced defendants credit under section 3585 and its predecessor section 3568 for certain time spent in state facilities, even though the defendant was not in the Attorney General's custody. *See, e.g.,* Bureau of Prison, Program Statement 5880.-28(c)(1)(a)(2),[3] 5880.28(c)(1)(b)[4] (Feb. 21,

---

**3.** Under the Program Statement cited in the text, credit will not be given for any portion of time spent serving another sentence regardless of whether the sentence is federal, state, or foreign, *except as follows:*

    *a.* Time spent serving another foreign or state sentence that is vacated may be creditable as prior custody time credit provided the sentence was not vacated merely for resentencing. Any such time which is credited must be time spent after the commission of the federal offense. If a vacated state or foreign sentence results in a re-trial and subsequent resentencing, any credit applied to that resentencing must be removed from the federal sentence computation, provided the inmate has not yet been released from that sentence.

    *b.* Time spent serving another federal, foreign or state sentence that is vacated merely for resentencing shall not have any effect on the [Sentencing Reform Act (SRA)] sentence computation until such time as the inmate is resentenced. If the resentencing results in a term which is less than the time the inmate has already served on the vacated sentence, the excess time not now credited to any other sentence shall be credited to the SRA term provided it was time spent after the commission of the federal offense.

**4.** Under another section, credit related to 18 U.S.C. § 3585(b)(2) will be given as follows:

    *1.* Prior Custody Credit will be given for time spent in official detention as the result of any federal, state or foreign arrest which is not related to, yet occurred on or after the date of commission of the federal offense for which the SRA sentence was imposed; provided it has not been credited to another sentence. The language in this Section eliminates any need for a federal detainer to be on file or for bail to be set on the state or foreign charges as a prerequisite for applying such presentence time credit toward the federal sentence. Relevant prerequisites are:

    *a.* The non-related official detention must have occurred on or after the *date* of the federal offense for which the SRA sentence was imposed.

    *b.* The non-related official detention must not have been granted on another sentence. If it was applied on a state or foreign sentence, then credit is not applicable to the SRA sentence.

    *2.* Failure by the state to grant official detention credit on a state sentence can be determined if:

    *a.* The state charges are dismissed.

    *b.* State probation is granted.

    *c.* The federal term is concurrent with the state term and the Full Term Date of the state term is absorbed within the Full Term Date of the federal sentence (prior to applying any presentence credits and regardless of any award of prior custody credits by the state). Prior custody credits would be given up to the date that the first sentence begins to run, federal or state. Credit may *not* be applied for any time

1992); *id.* at 5880.30(7)(c)(1) (July 16, 1993);[5] *see also Moreland,* 968 F.2d at 660 n. 10.

It follows from the anomalous result proffered by the Bureau and the absence of any support therefor in the statute or legislative history that the deference which we must accord it is minimal. *See Mills,* 967 F.2d at 1400 ("BOP's interpretation of section 3585 is unreasonable"); *Brown,* 895 F.2d at 536 ("we cannot accept as reasonable a definition of 'custody' that excludes enforced residence under conditions approaching those of incarceration; to do so would be contrary to the considerations of fairness that must have underlain Congress's provision of credit for time served").

After all, it is the statutory language we must construe. "To a normal English speaker, even to a legal English speaker, being forced to live in a halfway house is to be held 'in custody' ..." *Ramsey,* 878 F.2d at 996; *see also Brown,* 895 F.2d at 536. The "ordinary and obvious meaning of [a] phrase is not to be lightly discounted." *INS v. Cardoza-Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987). Such an understanding of "custody" has also been articulated by organizations involved in defining the standards in the field. *See* 3 American Bar Association, *Standards for Criminal Justice* 18–319 (2d ed. 1980) (should grant credit for time spent in "custody," including any bail program which "imposes substantial restrictions on the offender's freedom of activity"); National Advisory Commission on Criminal Justice Standards and Goals, *Corrections* § 5.8 comment. (1973) ("In some cases ... conditions for pre-trial release are substantial and involve serious restrictions on liberty. Where supervision is substantial, courts should be authorized to grant a measure of credit for such time against the sentence imposed.").

Notwithstanding the latter, we are not prepared to open the floodgates of credit by viewing "official detention" as encompassing the vast array of alternative sentencing mechanisms which are currently used in the federal system to confine and rehabilitate accused and convicted defendants. Instead, we find ourselves persuaded by the comments of Judge Heaney, for the five dissenters in *Moreland:* "Under the statute, the degree of confinement is what is at issue.... Moreover, ... the restrictions on [the defendant's] liberty were among the most severe

---

spent prior to the date of the SRA offense. Further, if the release from the non-federal sentence occurs prior to the imposition of the federal sentence, then any non-federal prior custody time awarded on the state sentence may *not* be applied to the federal sentence.

   *d.* The state sentence is vacated with further prosecution deferred, thereby effectively vacating the state's credit....

   *e.* Ordinarily, if a state sentence is served, the inmate will have received credit for the presentence official detention. However, if it can be demonstrated that the state did not credit the time, the credit will be awarded for time in state custody consistent with the instructions set forth in this section.

(table omitted).

**5.** This section, entitled "constructive federal custody," applies to defendants still governed by section 3568 as follows:

   (1) For time in non-federal custody when the non-federal custody is based on charges that later resulted in a federal sentence.

   (a) Credit shall be given for all time spent in non-federal or foreign custody when the underlying basis for custody in fact is a federal warrant. For example, if a federal warrant is issued and the defendant is arrested by county police or foreign officials on the basis of the federal warrant, credit shall be given from the date of arrest to the date of sentence for all days in custody. Inquiries or requests for foreign presentence time credit, along with copies of the judgment and commitment and copies of any documentation in the institution or in the possession of the prisoner, must be sent to the Chief of Inmate Systems Management for verification.

   (b) If the federal defendant has been in presentence state or foreign custody on essentially the same charges, credit shall also be given even though a federal detainer may not have been on file during that time. Credit shall also be given for time spent in non-federal presentence custody when the non-federal and federal charges are similar enough to be considered the same criminal act or offense. This non-federal presentence custody is applicable when the factors of time, location, and the criminal acts are identical in both charges. Credit shall also be given for all time spent serving a state sentence (on the same charges as defined in this paragraph), which has its conviction vacated with no further prosecution to follow, in addition to any other non-federal presentence time.

that could have been imposed as a condition of pretrial release. The government placed [the defendant] into a halfway house not only to ensure his appearance at trial but also to protect the community, a goal that is perhaps the central purpose of incarceration today." *Moreland,* 968 F.2d at 666–67.

Although the Bureau of Prisons maintains its position that "conditions at community treatment centers *generally* are neither penal in nature nor nearly as restrictive as those in a full custodial environment," Appellee's Br. at 9 (emphasis added), it does not argue that the release conditions imposed on Koray are not equal to the restrictions imposed on some defendants in the custody of the Bureau who do receive credit against their sentence. While the district court did not make factual findings regarding the conditions of confinement at the Volunteers of America facility, according to the allegations in Koray's motion in the district court (unchallenged by the Bureau), he was subjected to substantial restrictions on his liberty: he was permitted to leave the facility only once in 150 days (for a medical exam), he had to account for his presence five times a day, he was subject to random breath and urine tests, his access to visitors was limited in both time and manner, and there was a paucity of vocational, educational, and recreational services compared to a prison facility. In its brief, the Bureau admits that "the Volunteers of America maintains a halfway house similar to the manner in which the Bureau of Prisons may also operate such facilities." Appellee's Br. at 14.

The Bureau would preclude any factual determination of whether a prisoner was held under jail-type conditions, arguing that a bright-line rule is necessary in light of the fact-specific nature any alternative would require. Some courts have agreed. *See Randall v. Whelan,* 938 F.2d 522, 525 (4th Cir.1991) (broader definition of custody "would mire the judiciary in a swamp of factual and circumstantial details that would likely produce inconsistent and standardless decisions"); *Moreland,* 968 F.2d at 663 (Loken, J., concurring in judgment). It is signif-

icant, however, that the facts in many of the cases which appear to support a broad rule against giving credit for time in a halfway house were markedly different than these here, and those defendants would not have been entitled to credit under the criterion of "jail-type detention." For example, defendants in *Becak,* 954 F.2d at 387; *Insley,* 927 F.2d at 186; and *Spinola,* 941 F.2d at 1529, all were residing with one or more parent; the defendant in *Woods* was in a halfway house with work release, 888 F.2d at 654; and the custodial conditions in some of the other cases are unclear but appeared to permit daytime release.

Similarly, the cases relied upon by the Bureau from other courts which have refused to grant credit because the conditions imposed were not substantial enough to be equivalent to imprisonment are inapposite to this case. *See, e.g., United States v. Zackular,* 945 F.2d 423, 425 (1st Cir.1991) ("confinement to the comfort of one's own home is not the functional equivalent of incarceration in either a practical or a psychological sense"); *United States v. Edwards,* 960 F.2d 278, 282–85 (2d Cir.1992) (confinement to uncle's apartment except for religious services, choir practice, court appearances and to meet with attorney with intermittent electronic monitoring is insufficient to constitute "official detention"); *Marrera v. Edwards,* 812 F.2d 1517, 1517 (6th Cir.1987) (pre-trial confinement for medical treatment not "custody"); *United States v. Robles,* 563 F.2d 1308, 1309 (9th Cir.1977) (defendant released on recognizance with minimal restrictions not in "custody"), *cert. denied,* 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978); *United States v. Peterson,* 507 F.2d 1191, 1192 (D.C.Cir.1974) (defendant "at large on conditional release" not in "custody"); *cf. United States v. Parker,* 902 F.2d 221, 222 (3d Cir. 1990) ("a period of confinement as a condition of probation, *subject to a defendant's being released to go to work,* cannot possibly be equated with an equivalent period of imprisonment" (emphasis added)).

We therefore do not believe it will be administratively difficult to give credit for

time served by defendants under jail-type detention. The overwhelming majority of defendants will not be affected since only a small percentage of federal defendants are released to a halfway house. We also note that the Bureau was able to incorporate the Ninth Circuit's decision into its Program Statement,[6] and there is no allegation, much less evidence, that this overwhelmed the Bureau's administrative process.

Moreover, we note the inherent unfairness in declining to grant credit to a defendant who sought bail but was confined under jail-like conditions without giving the defendant notice that this would be the result. Some defendants, such as Koray, might choose not to request bail under these circumstances, particularly if the alternative is "official detention" in a minimum-security type institution with facilities superior to those in the halfway house in question. Further, we cannot ignore that the government derives the full benefits of incarceration, protecting the public and ensuring the defendant's presence at trial at a lower cost while freeing scarce jail space for truly dangerous offenders. *See* Garry A. Berger, *Pre–Sentence Halfway House Residents: Are They Entitled to Credit Toward Subsequent Prison Sentences?*, 27 Colum.J.L. & Soc.Probs. 191, 194 n. 11 (1993).

■ After careful consideration of the decisions of all the other courts to have ruled on the issue and the position of the Bureau of Prisons, we conclude that "official detention" for purposes of credit under 18 U.S.C. § 3585 includes time spent under conditions of jail-type confinement. While we do not go as far as does the Ninth Circuit which appears to authorize credit for confinement under somewhat less restrictive conditions, we believe the standard we establish is consistent with the language of the statute, Congress's intent, and the Bureau's initial rationale under the statute. We are confident that the district courts will have no difficulty in applying this test in the few situations we anticipate will arise. To assist the district courts, we explain this does not include confinement in drug rehabilitation facilities, where the defendant is receiving the benefit of the confinement, nor of course any halfway house where defendant leaves to work during part of the day. Because there has been no finding that Koray was in fact held under such conditions, we will remand for the necessary fact finding.

### III.

We will reverse the order of the district court and remand for further proceedings consistent with this opinion. The district court should conduct those proceedings with expedition, because the time that Koray must serve in prison will have expired if he is entitled to credit for the time he was con-

---

**6.** The Program Statement accommodates the Ninth Circuit's decision in *Brown* by providing as to defendants governed by section 3568 that:

> An exception to the rule, contained in paragraph 7.b.(5) above, pertains to any person sentenced in the Ninth Circuit, regardless of where that person is presently located or may transfer, who was ordered to spend time in a halfway house as a condition of bond, if that condition required that the person spend the night in the halfway house. (If the person worked nights and was ordered to spend off duty hours in the halfway house, then such off duty hours would be considered "nights" for crediting purposes.) For this particular group of defendants, credit must be given for each presentence day spent in the halfway house. (See *Brown v. Rison*, 895 F.2d 533 (9th Cir. 1990)).
>
> Regardless of whether a person is presently confined, or is received in the future, records

need not be reviewed until the person requests *Brown* credit. Exhaustion of administrative remedy is not required. Credit may be requested on a request to staff member form. Credit will only be given when the person can provide evidence, e.g., name of pretrial services officer, name and location of the halfway house, and dates of "custody" in the halfway house, to support the claim that such credit exists.

> Based on the information provided by the prisoner, staff are responsible for obtaining necessary documentation to substantiate the claim before *Brown* credit may be given. If information is received from some source other than the prisoner that *Brown* credit may apply, of if it is obvious that such credit may apply, then staff shall initiate an inquiry by interviewing the prisoner involved.

Bureau of Prisons, Program Statement 5880.-30(7)(b)(6) (July 16, 1993).

fined in the Volunteers of America facility.[7] The mandate shall issue forthwith.

**7.** We leave it to the discretion of the district court whether, under the circumstances, Koray should be released pending such a hearing.