Timothy S. EGAN, Petitioner,

v.

Kathleen M. HAWK, Director of Federal Bureau of Prisons; Ed Crosley, Administrator National Inmate Appeals; Patrick R. Kane, Regional Director, Federal Bureau Prisons; and Bill Hedrick, Warden, Federal Medical Center; in their official capacities as employees of the Federal Bureau of Prisons and in their personal capacities as individuals, Respondents.

No. CIV. 4–96–284.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 25, 1997.

Timothy S. Egan, pro se.

Patricia R. Cangemi, U.S. Atty. Office, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

TUNHEIM, District Judge.

Timothy Egan filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2241, challenging the Bureau of Prisons' ("BOP") decision to deny him a one-year reduction of his sentence. This matter is before the Court on Egan's objections to the Report and Recommendation of the Magistrate Judge recommending denial of the petition.

The Court has reviewed *de novo* the objections to the Report and Recommendation of the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.1(b)(2). Because the BOP's action contradicts the plain language of 18 U.S.C. § 3621(e)(2)(B) and defies the BOP's own regulation, the Court rejects the Report and Recommendation and remands this case to the BOP for further consideration consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Egan was convicted of possession with intent to distribute methamphetamine and conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846. At the time of his arrest, the police had seized from Egan's possession several firearms, almost sixty grams of methamphetamine, a cutting agent, and a triple balance beam. On September 1, 1992, Egan was sentenced in the United States District Court for the District of Nebraska. The court applied a two-level sentence enhancement authorized under the United States Sentencing Guidelines for offenses involving drugs and possession of a dangerous weapon. *See* U.S.S.G. § 2D1.1(b)(1) (1995). Egan was sentenced to 188 months of imprisonment on each count, to be served concurrently. His projected release date is January 2, 2006.

While in federal custody, Egan completed a Residential Drug Abuse Program ("RDAP"). He subsequently requested that the BOP reduce his sentence by one year as authorized by Congress in the Violent Crime Control and Law Enforcement Act of 1994, 18 U.S.C. § 3621(e)(2)(B) (1996). On July 13, 1995, the BOP denied Egan eligibility for a sentence reduction based on the BOP's categorical exclusion from consideration for sentence reduction inmates who, when sentenced, received a two-level enhancement for possession of a dangerous weapon.

On April 1, 1996, Egan filed a Petition for a Writ of Habeas Corpus. He sought judicial review of the BOP's decision denying him an incentive award based on his successful completion of the RDAP. Petitioner argues that, in light of his completion of that program, his term of imprisonment should be reduced by not more than one year pursuant to § 3621(e)(2)(B).

## DISCUSSION

### I. Introduction

■ After concluding that the Court had jurisdiction over Egan's petition,[1] the Magistrate Judge recommended denying Egan's request for relief. The Magistrate Judge relied on the reasoning provided by the district court in *Sesler v. Pitzer*, 926 F.Supp. 130 (D.Minn.1996), *aff'd*, 110 F.3d 569 (8th Cir.1997).[2] In *Sesler*, the petitioner had pled guilty to the crime of using a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). After completing more than one drug program implemented pursuant to 18 U.S.C. § 3621(b) and being denied a twelve-month incentive award, the petitioner filed his habeas corpus action.

The district court in *Sesler* rejected the petitioner's arguments that the BOP had acted contrary to his protectable liberty interests. The court found that the implementing statute for the drug treatment incentive program does not allow review under the Administrative Procedures Act ("APA"). *See Sesler*, 926 F.Supp. at 132 (analyzing 18 U.S.C. § 3625 (1996)). Nevertheless, the court reviewed the merits of Sesler's petition. The court found ultimately that the BOP did not act in violation of the Constitution or a congressional directive in denying Sesler a sentence reduction—for nonviolent prisoners who have successfully completed a drug rehabilitation program—because the BOP did not exceed its discretion in determining that Sesler was convicted of a violent offense. *Id.* at 132–33. The court also concluded that the

petitioner did not have a liberty interest in a reduction in his sentence. *Id.* at 133.

There is, however, an important distinction between *Sesler* and the instant case. In *Sesler*, the petitioner was convicted of a drug-trafficking offense involving the use of a firearm, a crime clearly falling within Congress's definition of a "crime of violence." *See* 18 U.S.C. § 924(c)(3). Here, Egan was convicted of two drug offenses that did not involve the use of a firearm; the presence of firearms at the location of his arrest was simply a factor in determining his sentence. Although the Magistrate Judge recognized that the Ninth Circuit's analysis in the *Downey v. Crabtree*, 100 F.3d 662, 668 (9th Cir. 1996), suggests that this distinction is dispositive, the Magistrate Judge declined to adopt the reasoning of the *Downey* court.[3]

Since the Magistrate Judge issued his recommendation in this case, the Third Circuit has issued a decision which largely adopts the analysis in *Downey*. *See Roussos v. Menifee*, 122 F.3d 159 (3rd Cir.1997). The *Roussos* decision persuades this Court that *Sesler* is inapposite in this context.

In *Roussos*, as in this case, the BOP had denied a habeas petitioner a sentence reduction under 18 U.S.C. § 3621(e)(2)(B) because the petitioner's sentence following a drug conviction had been enhanced due to the presence of weapons. 122 F.3d at 160. The *Roussos* court concluded that, by using sentencing factors in determining whether or not a prisoner was "convicted of a nonviolent offense" under § 3621(e)(2)(B), the BOP had contradicted the plain language of the statute and its own regulation. *Id.* at 163. In so holding, the court distinguished *Sesler*, pointing out that Sesler was *convicted* of using a firearm during the commission of the offense,

---

1. Egan petitioned this Court for a writ of habeas corpus, challenging the BOP's denial of his eligibility for a sentence reduction while he was housed in the Federal Medical Center ("FMC") in Rochester, Minnesota. Thereafter, the BOP transferred Egan to the Federal Prison Camp in Yankton, South Dakota and subsequently to the Federal Prison Camp in Leavenworth, Kansas. In Minnesota, habeas jurisdiction continues to lie in the district in which the petitioner was incarcerated at the time that the habeas petition was filed and does not depend solely on the physical presence of the petitioner within the judicial district, as long as respondent was properly served. *Schmanke v. United States Bureau of Prisons*, 847 F.Supp. 134, 136 n. 3 (D.Minn.1994) (citing *Ex parte Endo*, 323 U.S. 283, 306, 65 S.Ct. 208, 220, 89 L.Ed. 243 (1944) and *McCoy v. United States*

*Board of Parole*, 537 F.2d 962, 966 (8th Cir. 1976)); *see also Braden v. 30th Judicial Circuit*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (holding that habeas corpus jurisdiction does not depend solely on petitioner's physical presence within the jurisdiction). Thus, this Court has jurisdiction over Egan's petition.

2. The Eighth Circuit heard Sesler's appeal after the Magistrate Judge reviewed Egan's petition. Sesler did not raise his constitutional claims on appeal.

3. In *Downey*, the court held that the BOP's sentence reduction decisions pursuant to 18 U.S.C. § 3621(e)(2)(B) must be based on a prisoner's underlying conviction. *See* 100 F.3d at 668.

rather than merely sentenced to serve more time due to the presence of firearms. *See id.* at 162. The court therefore invalidated the BOP's determination. *Id.*

Based on the following analysis, which is consistent with the reasoning set forth in *Roussos* and *Downey*, this Court finds that Egan's petition should be granted in part, and this matter should be remanded to the BOP for further determinations consistent with this opinion.

## II. The BOP's determination must be rejected because it contradicts the plain meaning of 18 U.S.C. § 3621(e)(2)(B) and its own regulation.

### A. The Court may review the BOP's interpretation of § 3621(e)(2)(B).

■ Relying on *Sesler*, the Magistrate Judge found that determinations made by the BOP are not reviewable under the APA. *See Sesler*, 926 F.Supp. at 132. It is true that Congress exempted BOP decisions carrying out § 3621(e)(2)(B) from judicial review under the APA. *See* 18 U.S.C. § 3625 ("The provisions of sections 554 and 555 and 701 through 706 of Title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."). However, as the *Sesler* court implicitly recognized, this Court may always review an agency interpretation of federal statute and overturn that interpretation if it is based on an impermissible construction of the statute. *See, e.g., Wajda v. United States,* 64 F.3d 385, 388 (8th Cir.1995) (indicating a court always has the authority to determine whether an agency exceeded its statutory authority); *see also Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1994) ("the question for the court is whether the agency's answer is based on a permissible construction of the statute"); *National R.R. Passenger Corp. v. Boston and Maine Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 1401,

118 L.Ed.2d 52 (1992) (where BOP's "interpretation is ... in conflict with the plain language of the statute, deference is [not] due"); *Fowler v. United States Parole Comm'n,* 94 F.3d 835, 837 (3rd Cir.1996) ("We owe no deference ... to administrative interpretations or regulations that are based upon an impermissible construction of the statute").[4]

Also, some circuits have indicated that courts need only accord "some deference" to an agency interpretation contained in a Program Statement. *See, e.g., Roussos,* 122 F.3d at 163; *Koray v. Sizer,* 21 F.3d 558, 562 (3rd Cir.1994) (stating BOP program statements are entitled to less deference because they are not promulgated under the rigors of the APA and are merely "internal guidelines [that] may be altered by the Bureau at will"), *rev'd on other grounds sub nom., Reno v. Koray,* 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). Moreover, courts have recognized that a provision of a Program Statement may be rejected if it contradicts another BOP regulation. *See, e.g., National Family Planning v. Sullivan,* 979 F.2d 227, 234 (D.C.Cir.1992) (finding that an agency may not enforce rules which are inconsistent with their own regulations); *see also Roussos,* 122 F.3d at 163 (invalidating a portion of the BOP's program statement in part because it violates a regulation).

■ Thus, although a Program Statement is not reviewable under the APA and is entitled to some deference, this Court has the authority to reject it if it is inconsistent with the plain language of a statute or clearly defies a BOP regulation.

### B. Applicable statutes and regulations.

After completion of the RDAP, Egan requested a reduction of his sentence pursuant to § 3621(e)(2)(B). This section provides:

The period a prisoner *convicted of a nonviolent offense* remains in custody after successfully completing a [residential sub-

---

**4.** The Magistrate Judge also noted that Congress's use of the word "may" in § 3621(e)(2)(B) indicates it left to the BOP's discretion the determination of whether to reduce a prisoner's sentence. As discussed *infra,* this Court agrees that the BOP has the ultimate authority to decide—

through the employment of permissible factors— whether to reduce Egan's sentence. However, the Court has the authority to overturn the BOP's determination if the BOP relied solely on a factor that is inconsistent with the plain language of the statute. *See Roussos,* 122 F.3d at 164.

stance abuse] treatment program *may be reduced* by the Bureau of Prisons, but such a reduction may not be more than one year from the term the prisoner must otherwise serve.

*Id.* (emphasis added).

The BOP denied Egan's petition on the ground that he was not eligible for a sentence reduction under this section because he was not convicted of a "nonviolent offense." The BOP has promulgated a regulation defining "nonviolent offense" as an offense that is not a "crime of violence:"

An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months, ... unless the inmate's *current offense* is determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3)....

28 C.F.R. § 550.58 (1995) (emphasis added); *see United States v. Mayotte,* 76 F.3d 887, 889 (8th Cir.1996) ("We believe that a 'nonviolent offense' necessarily excludes a 'crime of violence.'"). In turn, 18 U.S.C. § 924(c)(3) provides:

[T]he term "crime of violence" means an offense that is a felony and—(A) has as an *element* the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that *by its nature,* involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3) (emphasis added).

The BOP also has issued a Program Statement addressing further the meaning of "crime of violence." The Program Statement identifies certain crimes that the BOP considers "crimes of violence" and identifies certain sentencing characteristics which convert other crimes into "crimes of violence." Program Statement 5162.02 (July 24, 1995) (as amended, April 26, 1996). Section 9 of the Program Statement ("Section 9") provides that a conviction for a drug-related offense should be considered a crime of violence if the sentencing court increased the base level of the sentence for possession of a dangerous weapon during the commission of the offense. *See id.* Section 9 also sets forth a justification for this definition, stating "possession of a dangerous weapon during commission of a drug offense poses a substantial risk that force may be used against persons or property." *Id.* Thus, Section 9 categorically denies a sentence reduction to individuals—such as Egan—who were convicted drug offenses and received enhanced sentences for possession of a weapon.

**C.** **Section 9 of the Program Statement must be rejected because it defies the plain meaning of § 3621(e)(2)(B) and contradicts the BOP's own regulation.**

█ Section 9 categorically declares that all inmates who were convicted of a drug-related offense and received two-level sentencing enhancements for firearms are not eligible for a sentence reduction under § 3621(e)(2)(B). Because this provision defies the plain language of § 3621(e)(2)(B) and BOP's own regulation, it cannot survive judicial review.

The statute specifies that the BOP may reduce the period of confinement for a "prisoner convicted of a nonviolent offense." 18 U.S.C. § 3621(e)(2)(B). Although "nonviolent offense" may be ambiguous, the term "convicted" is both clear and operative. The statute makes no reference to the findings or factors which only affected the prisoner's sentence.[5]

Under Section 9, however, the BOP has made sentencing factors determinative, without regard for whether the crime for which the defendant was *convicted* is nonviolent. Thus, as applied; Section 9 converts the statute into one that reads "the Bureau may reduce the period of confinement for a prisoner convicted of a nonviolent offense *and* sentenced without an enhancement for fire-

---

5. The Court finds it would be unreasonable to conclude that Congress intended the term "convicted" to refer to both the guilt (conviction) and sentencing determinations. Although both are judicial determinations, they are independent. Congress's use of the term "convicted" plainly refers only to the determination of guilt.

arms possession." Such an alteration subverts the plain meaning of the statute by precluding a sentence reduction even though an inmate was *convicted* of a nonviolent crime. *See Roussos,* 122 F.3d at 163 (finding Section 9 conflicts with § 3621(e)(2)(B) because it relies on sentencing factors rather than the offense underlying the conviction); *Downey,* 100 F.3d at 667–68 (same). Thus, by looking beyond the offense for which a defendant was convicted to sentencing enhancement factors, Section 9 embodies an interpretation of the statute that is unreasonable and erroneous. *See Roussos,* 122 F.3d at 162 ("the statute makes clear that it is impermissible to consider facts other than those that form the basis for the elements of the offense for which the prisoner was convicted"); *Downey,* 100 F.3d at 668 ("The operative word of § 3621(e)(2)(B) is 'convicted.' ... Section 3621(e)(2)(B) addresses the act of convicting, not sentencing or sentence-enhancement factors. The Bureau erred by conflating the guilt-determination (conviction) and sentencing processes.").

Moreover, Section 9 must be rejected because nowhere in the statute, in other federal statutes, or in the BOP's rules or regulations are drug-trafficking offenses, in and of themselves, declared to be violent crimes. *See Roussos,* 122 F.3d at 163 ("Had Roussos's sentence [for drug-trafficking] not been enhanced, he apparently would have remained eligible for a sentence reduction under § 3621(e)(2)(B) because his *conviction* was not classified as a crime of violence....").

Likewise, although Congress did not define "nonviolent crime," the BOP's own regulation and controlling case law establishes that drug offenses are in fact nonviolent. The BOP's regulation, 28 C.F.R. § 550.58, provides prisoners with eligibility for a reduced sentence up to one year, unless the inmate's current offense is a "crime of violence," as defined in § 924(c)(3). In other words, in its regulation, the BOP interprets "nonviolent offense" to be an offense that is not a "crime of violence." Under § 924(c)(3), a crime of violence requires either that the defendant used a weapon as an element of the offense

or the felony offense by its nature involved substantial risk of physical force. Sentencing considerations are not relevant for determining what *offenses* constitute crimes of violence under § 924(c)(3). *See Roussos,* 122 F.3d at 163; *Downey,* 100 F.3d at 668.[6] In interpreting § 924(c)(3), courts in this circuit and elsewhere have concluded that mere drug offenses do not constitute crimes of violence. *See Roussos,* 122 F.3d at 163; *Downey,* 100 F.3d at 668 (9th Cir.1996) (citing cases); *United States v. Cruz,* 805 F.2d 1464, 1474–75 (11th Cir.1986) (a drug offense is not a "crime of violence"), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987) & 482 U.S. 930, 107 S.Ct. 3215, 96 L.Ed.2d 702 (1987); *United States v. Meyer,* 803 F.2d 246, 248–49 (6th Cir.1986) (same), *cert. denied,* 480 U.S. 936, 107 S.Ct. 1580, 94 L.Ed.2d 770 (1987); *United States v. Arrellano–Rios,* 799 F.2d 520, 523 (9th Cir.1986) (the government concedes that narcotics offenses are not "crimes of violence"); *United States v. Wells,* 623 F.Supp. 645, 646 (S.D.Iowa 1985) (offense of cocaine distribution is not a "crime of violence"); *see also United States v. Douglas,* 64 F.3d 450 (8th Cir.1995) (felon in possession of a firearm offense is not "crime of violence" for purposes of career offender provision).

While Section 9 does not provide that drug offenses themselves are crimes of violence, it purports to convert a drug offense into a "crime of violence" if the sentencing court increased the base level of the sentence for possession of a dangerous weapon during the commission of the offense. Section 9 therefore effectively alters the established meaning of § 924(c)(3) to include sentencing factors that do not form part of the offense. Thus, Section 9 not only defies the plain meaning of § 3621, but also directly conflicts with the BOP's own regulation, which explicitly adopts the definition of "crime of violence" set forth in § 924(c)(3). *See Roussos,* 122 F.3d at 163 ("By ignoring the offense of conviction and looking only to sentencing factors, the BOP has attempted to transmogrify a 'nonviolent offense' into 'a crime of violence.' In other words, the Bureau convert-

---

6. Section 924(c)(3) plainly defines "crime of violence" in relation to an individual's "offense," not the sentencing factors associated with the offense.

ed a nonviolent crime into a violent one by means of a Program Statement that is inconsistent with the language of the statute, and its own regulations."). The BOP's reliance on Section 9 to deny Egan a sentence reduction was in error.

Again, *Sesler* is not to the contrary. In *Sesler*, the district court did not have to determine whether it could overturn the BOP's denial of a sentence reduction because Sesler had been *convicted* of a crime in which use of a firearm was an element, and hence, the BOP's action had not defied the plain meaning of § 3621(e)(2)(B). Moreover, in affirming the district court's opinion in *Sesler*, the Eighth Circuit focused on the fact that the use of a firearm was an element of the offense: "[g]iven the *elements* necessary for a § 924(c)(1) conviction, we agree with the Bureau's conclusion that a § 924(c)(1) offense is clearly not a nonviolent offense within the meaning of § 3621(e)(2)(B)." 110 F.3d at 571–72 (emphasis added). In this case, Egan was convicted of a crime in which the use of a firearm was *not* an element; the sentencing court merely enhanced his sentence based on the presence of weapons. By focusing on the *elements* of the underlying conviction as mandated by § 3621(e)(2)(B), the *Sesler* court highlighted the distinguishing feature of that case and adopted an analytical framework consistent with that presented here.

This Court has the power to review an agency's interpretation of federal statute. While the BOP retains discretion to promulgate additional requirements for sentence reduction eligibility, it cannot defy the plain language used by Congress. Section 9 impermissibly contradicts the plain meaning of § 3621(e)(2)(B) and the BOP's own interpretation of "nonviolent offense." This Court therefore joins with the *Roussos* court and rejects Section 9.[7]

## III. The Court must remand this matter to the BOP for a determination of whether petitioner should receive early release.

▇▇▇ Because the BOP's interpretation of 18 U.S.C. § 3621(e)(2)(B) is impermissible, the BOP cannot rely on Egan's sentencing enhancement to deny him eligibility for the sentence reduction. However, granting petitioner's request for early release is not the proper remedy in this case. Egan does not possess a liberty interest in early release since "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). The statute clearly states that the BOP "may" reduce a prisoner's sentence after completion of a drug abuse treatment program. 18 U.S.C. § 3621(e)(2)(B). Therefore, § 3621(e)(2)(B) allows the BOP to shorten an inmate's sentence by up to one year, but it does not mandate such a reduction. *See O'Bar v. Pinion*, 953 F.2d 74, 84 (4th Cir.1991) (holding that a statute which established a work-release plan with certain requirements created a "hope about a future discretionary decision by prison administrators [which was] too speculative to give an inmate a liberty interest").

▇▇▇ Because the statute's conditional language does not create a liberty interest, to declare petitioner automatically eligible for release would impermissibly encroach upon an area Congress left to the discretion of the BOP. *See United States v. Jackson*, 70 F.3d 874, 878 (6th Cir.1995) (noting that the BOP has "broad authority to manage the enrollment of prisoners in drug abuse treatment programs" and finding that "it was beyond the District Court's authority to order defendant's participation in a drug treatment program while incarcerated."); *United States v. Williams*, 65 F.3d 301, 307 (2d Cir.1995) ("A

---

7. At least one court in this district has reached a different conclusion in an unpublished decision. *See Arctic v. Tippy*, Civ. No. 3–96–1192 (March 20, 1997)(unpublished). *Arctic*, however, was decided before *Roussos*, which this Court finds persuasive. In addition, the Court notes that, in holding that drug offenses are "nonviolent of-

fenses" because they are *not* "crimes of violence," this Court adopts a position that is wholly consistent with the Eighth Circuit's view that "crimes of violence" and "nonviolent offenses" are mutually exclusive terms. *See United States v. Mayotte*, 76 F.3d 887, 889 (8th Cir.1996).

sentencing court has no authority to order that a convicted defendant be confined in a particular facility, much less placed in a particular treatment program; those decisions are within the sole discretion of the Bureau of Prisons."). Rather, the Court leaves the determination of eligibility for early release to the discretion of the BOP consistent with the reasoning of this opinion. Although the BOP may not use sentencing factors as it has in Section 9, the Court recognizes that the BOP may wish to employ other valid considerations in determining whether to grant Egan's request for a sentence reduction.

### ORDER

Based on the submissions of the parties and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that the Magistrate Judge's Report and Recommendation [Docket No. 22] is **REJECTED**; plaintiff's objections [Docket No. 23] are **GRANTED IN PART**; the BOP's Program Statement 5162.02, Section 9 is **DECLARED VOID**; and this case is **REMANDED** to the BOP for determination of petitioner's eligibility for early release consistent with the reasoning of this opinion.